## No. 4321.

### SUCCESSION OF A. CONSTANT HEARING.

A man may take out a policy of insurance on his life in the name of any one, or having taken it out in his own name, he may, with the consent of the assurers, transfer it to whom he pleases.

A policy of insurance is not a piece of property; it is the evidence of a contract, the contract being that a certain sum of money will be paid upon the happening of a certain event, to a particular person, who is named in the policy, or who may be the legal holder thereof.

A creditor may have the life of his debtor insured, even without the consent of his debtor. A husband has the right to insure his life in the interest of his wife and child, as well as in the interest of his creditor. If the policy issues to the wife, or is properly transferred to her, the amount stipulated therein belongs to her when the event secured against happens, and she can not be forced to inventory it as a part of her husband's estate. The object he had in view would be defeated if a contrary doctrine prevailed.

It is the wife whom the husband seeks to protect when he insures his life in her behalf. Otherwise he would not insure in her name. He has no need to protect his creditors by such a mode, for they can protect themselves.

APPEAL from the Second District Court, parish of Orleans. *Tissot.* J. *George L. Bright,* for plaintiffs and appellants. *Hudson & Fearn* and *J. L. Tissot,* for defendant and appellee.

MORGAN, J. This is an attempt on the part of several creditors of the deceased A. C. Hearing, to force his widow to place upon the inventory of the property of his estate several policies of insurance which had been effected on his life. The policies are issued in favor of his wife, and his wife and child, or have been transferred to them. One of the policies was on the life of another man, transferred by the assured to Hearing, and by him transferred to his wife.

Mrs. Hearing had obtained a separation of property from her husband, and a judgment against him for $2500, with legal interest from twenty-seventh July, 1854. Upon this judgment *fieri facias* issued, and was returned *nulla bona.* Subsequently her counsel received from her husband $475 50 by the sale and transfer to her of all the furniture and movables of the deceased in the house No. 21 Hospital street.

The premiums on the policies in controversy have been paid by

Mrs. Hearing, or the policies were issued directly for her benefit and the benefit of her child.

Admitting that the judgment of separation is worthless, upon which we express no opinion, the question we are called upon to decide is whether these policies should be inventoried as a part of Hearing's estate, and thus made liable for his debts, or whether they belong to his wife and child?

We think the latter. A man may take out a policy of insurance on his life in the name of any one, or having taken it out in his own name, he may, with the consent of the assurers, transfer it to whom he pleases. A policy of insurance is not a piece of property; it is the evidence of a contract, the contract being that a certain sum of money will be paid upon the happening of a certain event, to a particular person named in the policy, or who may be the legal holder thereof. A creditor may have the life of his debtor insured, even without the consent of his debtor. A husband has the right, we think, to insure his life in the interest of his wife and child, as well as in the interest of his creditor, and his obligation to provide for them in case of his death is certainly well recognized. If the policy issues to the wife, or is properly transferred to her, the amount stipulated therein belongs to her when the event insured against happens, and she can not be forced to inventory it as a part of her husband's estate. The object he had in view would be defeated if a contrary doctrine prevailed. It is the wife whom the husband seeks to protect when he insures his life in her behalf; otherwise he would not insure in her name. He has no need to protect his creditors by such a mode, for they can protect themselves.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed with costs.

LUDELING, C. J., *dissenting.* Antoine Constant Hearing died at his domicile in New Orleans on the twenty-fifth of December, 1872. He left a will making his child his universal legatee and his wife his executrix. This suit is to compel her to put upon the inventory of the succession certain policies of insurance on his life, made during his marriage, in favor of his wife and child, and one on the life of a stranger which had been transferred to the husband, who had transferred it to his wife, amounting in the aggregate to upwards of $19,000.

The question presented for decision is, do these policies belong to the succession?

In regard to the policies in favor of the wife and the one transferred

to her, I have no doubt they belong to the succession, having consti-tuted a part of the community of acquets and gains existing between her and her husband at the time the policies were acquired.

The rights were acquired by Hearing, he paying the premiums. They belonged therefore to the community, although acquired in the name of the wife alone. The Civil Code declares that this "commu-nity consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estates which they may acquire during marriage, either by donations made jointly to them both or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the per-son who made the purchase." Article 2402.

It is urged that she acquires the insurance money only after the dis-solution of the community by the death of her husband. But if she had not had the policies, which were created necessarily during the lifetime of the husband whose life was insured, no money could have been collected after death.

Insurance money was paid only in consequence of the contracts of assurance, and the right to the money stipulated to be paid therein was vested the moment the policies were delivered to the party insuring, subject only to the conditions stipulated in the policies. The right to the money existed during the marriage, although not exigible until after the death of the assured. The case of succession of Richardson, 14 An. p. 1, can not be regarded as an authority in point. The ques-tion decided in that case was that a husband who owed his wife for paraphernal funds received by him, could authorize her to invest the money paid by him to her to satisfy her claims against him for her paraphernal property in a policy of assurance on her life.

In the case of succession of Kugler, 23 An., the only question was whether or not the widow and children of Kugler could claim $1000 of the succession, besides the insurance money. We held that the evidence showed they had $1000 when the deceased died, and could not get any more under the homestead law. The question involved in the case at bar was not raised in that case, and could not have been, and I believe that it is now presented for decision to this court for the first time.

The French decisions referred to in the defendant's brief go to this extent and no further, that the assured, who obligates himself to pay the premium on the policy in favor of the persons named therein, stipulates not for himself, but for those named by him, and that under

art. 1121 of the Code Napoleon, the parties thus named have acquired the right to the future insurance money from the date of the contract.

But those decisions do not decide that such *stipulation pour autrui* can be made by the husband in favor of his wife, so as to vest a separate and distinct right in herself. On the contrary, as it is held that the rights vested in the person in whose favor the stipulation is made, from the date of the contract, it follows that the right was acquired during the community, and must belong to the community, unless insurance policies form an exception to the general rule. I know of no such exception. And the laws of Louisiana forbid contracts between husbands and wives except in the few cases enumerated in the Code. The policy which was transferred to the husband, and which was afterwards transferred by him to his wife, clearly belongs to the community, as the husband was forbidden by the law to contract with his wife.

The pretended judgment of separation between the husband and wife has no validity. The claim of the wife was for her property received by the husband in Missouri when they resided there.

In regard to the policies in favor of the child, I have more difficulty in coming to a conclusion. I am inclined to the opinion, however, that Mr. Hearing could not make those *stipulations pour autrui,* as to his child or strangers, unless at the time he made the contracts of assurance his affairs were in such a condition that he could have made valid donations of his property to the value of the premiums paid. This does not appear to have been the case. The property of the debtor is the common pledge of his creditors, and he can not under the circumstances gratuitously dispose of it to their prejudice with the sanction of the law.

I therefore dissent from the opinion of the majority of the court.
Rehearing refused.