## THOMAS P. MARTIN v. JOHN U. McALLISTER ET AL.

No. 1023. Decided June 17, 1901.

**1. Estates of Decedents—Insurance.**

The proceeds of a policy of insurance upon the life of the wife for the benefit of her husband were not community property nor part of her estate, but belonged to the beneficiary in his separate right. (Pp. 569, 570.)

**2. Same—Insurance with Community Funds.**

The use by the husband of community funds in procuring insurance for his benefit on the life of the wife will not make the proceeds of the policy on her death community property, in the absence of fraud. (P. 570.)

**3. Community Property—Surviving Husband—Payment of Debts—Adjustment of Rights.**

The surviving husband who pays community debts out of his separate funds is entitled to be reimbursed out of the community property, even though it be homestead or exempt property not liable for such debts; and when he has so paid more than the value of the community property in his hands, he may have the rights of the parties adjusted in a proper proceeding and a decree establishing his right to all the property as against the heirs of the wife. (Pp. 570, 571.)

ERROR to the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

Martin sued McAllister and others and appealed from a judgment in their favor. On its affirmance he obtained writ of error.

*A. A. Henderson,* for appellant.—The surviving husband has the right to retain the community property, including the community homestead, to reimburse himself for community debts paid with his

own separate means.  1 Buck. Dig. (Batts' ed.), p. 399, secs. 253, 2531; Davis v. Harman, 9 Texas Civ. App., 356; Leatherwood v. Arnold, 66 Texas, 414; Fagan v. McWhirter, 71 Texas, 569; Ash v. Youngst, 65 Texas, 631; Wenar v. Stenzel, 48 Texas, 438; Johnson v. Morrison, 48 Texas, 267; Nelms v. Nayle, 35 S. W. Rep., 60; Cage v. Tucker's Heirs, 14 Texas Civ. App., 316; Watts v. Miller, 76 Texas, 15; Johnson v. Taylor, 43 Texas, 122; Burkett v. Key, 42 S. W. Rep., 231.

*West, Smith & Chapman*, for appellees.—The community estate of appellant and his deceased wife being insolvent, the appellees, children of appellant and of Corrie M. Martin, deceased, upon Mrs. Martin's death became, by inheritance, the owners in fee simple of their mother's one-half interest in the property used as a homestead by the head of the family before, at the time of, and after Mrs. Martin's death, not charged with the payment of their parents' community debts.  The property in question, being the community homestead at the death of Mrs. Martin, and being used as a homestead by appellant and two minor appellees after Mrs. Martin's death, was exempt from execution and could not be subjected to the payment of debts directly by the creditors or indirectly by appellant, by virtue of subrogation. Const., art. 16, sec. 52; Rev. Stats., arts. 2055, 1869, 1696, 1697, 2219; Zwerneman v. Von Rosenberg, 76 Texas, 522; Hoffman v. Hoffman, 79 Texas, 189; Lacey v. Lockett, 82 Texas, 190; Roots v. Roberts, 58 S. W. Rep., 308.

BROWN, Associate Justice.—Mrs. Cornelia Martin, the wife of the plaintiff in error, died on the 19th day of March, 1896, leaving surviving her Thomas P. Martin, her husband, and her daughters, Mrs. McAllister, Mrs. Hubbard and Mrs. Williams, all of whom were married at the time of her death, and also her son, Thomas P. Martin, Jr., then an adult, and Robert and Virginia Martin, then minors.  Before and at the time of his wife's death, Thomas P. Martin owned and occupied a home in the city of Fort Worth, upon which he has contined to reside, and the two minor children lived with him until recently, but both have gone from the home to live with their sisters. Mrs. Martin died intestate and no administration was ever had on her estate nor did the husband qualify as community survivor.  Of the property which belonged to the community, there remains in the hands of the surviving husband personal property of the value of $575 and the homestead, which is worth $4000, aggregating the sum of $4575.  At the date of Mrs. Martin's death, there existed debts against the community amounting to $8840.

Plaintiff in error received $817.33 in cash, which was community property of himself and his deceased wife and was applied to the payment of the community indebtedness.  He also received the proceeds of the policy of life insurance upon the life of Mrs. Martin, which was made payable to plaintiff in error, of which he applied $5667.35 to the payment of community debts, and also applied to the payment of the

said debts the sum of $511.01 which he acquired after Mrs. Martin's death by his own labor.

Martin claimed the right to retain the community property which remained in his hands to reimburse him for his separate funds used in the payment of the community debts, and this right being denied by his children, this suit was instituted to quiet his title to the property still in his possession. The case was tried before the court and the community property on hand was divided, one-half to the plaintiff in error and the other half among the children of Mrs. Martin. The Court of Civil Appeals affirmed this judgment, from which this writ of error has been granted.

The following questions are involved in this case: 1. Were the proceeds of the policy upon the life of Mrs. Martin the separate funds of her husband? 2. If so, did he have the right to be reimbursed for his expenditures in the payment of the community debts out of the homestead and other property exempted from forced sale?

The money derived from the policy on the life of Mrs. Martin was not acquired during the marriage, but was received by the husband after her death in pursuance of a contract of insurance made during her life, and belonged to Thomas P. Martin in his separate right. Mullens v. Thompson, 51 Texas, 7; Succession of Kugler, 23 La. Ann., 455; Succession of Hearing, 26 La. Ann., 326; Succession of Clark, 27 La. Ann., 270; Succession of Bofenshen, 29 La. Ann., 711; Chapin v. Fellows, 36 Conn., 132; Evans v. Opperman, 76 Texas, 298.

In the case of Mullens v. Thompson, above cited, the controversy was over the proceeds of a policy made payable to the heirs or assigns of the insured. The mother and father were the heirs at law of the deceased and it was claimed that the proceeds of the policy, which was taken out by the deceased himself, belonged to his estate, but the Supreme Court, by Judge Gould, held the contrary, saying: "Insurance policies, other than those classed under the head of endowments, are ordinarily taken out for the benefit of some third person or class of persons, and not as a mere investment for the benefit of the estate of the insured. They may be payable to and for the benefit of a named person or persons, or of a designated class; as, parents, children, next of kin or heirs."

In the Succession of Hearing, above cited, the Supreme Court of Louisiana held that the proceeds of a policy of insurance on the life of the husband in favor of the wife were not the community property of the spouses and were not liable for the debts of the husband. That court said: "A policy of insurance is not a piece of property; it is the evidence of a contract, the contract being that a certain sum of money will be paid, upon the happening of a certain event, to a particular person named in the policy, or who may be the legal holder thereof. A creditor may have the life of his debtor insured, even without the consent of his debtor. A husband has the right, we think, to insure his life in the interest of his wife and child, as well as in the interest of his creditor, and his obligation to provide for them in

case of his death is certainly well recognized. If the policy issues to the wife, or is properly transferred to her, the amount stipulated therein belongs to her when the event insured against happens, and she can not be forced to inventory it as a part of her husband's estate. The object he had in view would be defeated if a contrary doctrine prevailed. It is the wife whom the husband seeks to protect when he insures his life in her behalf; otherwise, he would not insure in her name. He has no need to protect his creditors by such a mode, for they can protect themselves."

It is contended by the defendants in error that the husband could not appropriate the community funds to his own use in the purchase of this contract without the consent of his wife, but our statute specially provides that the husband shall have the sole right of control of the community property and it has been uniformly held that such control can not be interfered with, unless it is exercised in fraud of the rights of the wife. Rev. Stats., art. 2968; Stramler v. Coe, 15 Texas, 216. We see no ground in the facts of this case to impeach the action of the husband as fraudulent towards his wife. The right to the proceeds of the policy, whether upon the life of the wife in favor of the husband or upon the life of the husband in favor of the wife, rests upon the same principle, which is that the proceeds of the policy belong to the person named as payee, and it becomes property upon the contingency of the death of the insured in the lifetime of the payee. Therefore, as it could not become the property of the husband or the wife during the lifetime of both of them, it can not be held to be community property, and is therefore the separate property of the one to whom it is made payable.

The defendants in error contend that if the funds with which the community debts were discharged shall be held to be the separate property of the plaintiff in error, then he can not be remunerated out of the community property on hand, because it consists of the homestead and other exempt property which could not be made liable for the debts of the creditor. The exemption of the homestead and other property was in favor of the father, the head of the family, and did not inure to the benefit of the children upon the death of their mother. Ashe v. Yungst, 65 Texas, 631.

Although the plaintiff in error could not have been compelled to yield up his homestead to pay the community debts, yet he had the authority as surviving husband to waive his exemption and sell the homestead, applying the proceeds to the payment of the community debts. Wilson v. Helms, 59 Texas, 680; Fagan v. McWhirter, 71 Texas, 567. If the surviving husband had the power to sell the homestead and apply the proceeds to the payment of the community debts, we think that it logically follows that he also had the power to sell that property, and, out of the proceeds, to reimburse himself for the amount paid out of his separate funds.

It is not necessary for this court to hold that a surviving husband may appropriate to himself the community property as a reimburse-

ment for his separate funds used in the payment of community debts upon his own valuation thereof or after any proceeding for that purpose, for in this case the surviving husband has instituted a proceeding to adjust the rights of the parties in the property and the court should have adjusted them according to the equities of the case. The findings of the court below show that the plaintiff in error paid about $6100 community debts with his separate funds and that all of the property, including the homestead, left in his hands amounts to $4575, being something like $1600 less than the amount he paid out of his separate funds for the benefit of the community. The defendants have not offered to pay the one-half of the amount which he has expended for their common benefit, nor have they asked of the court that the property be sold and the proceeds divided, nor do they contest the correctness of the valuation placed upon the property by the trial court. It follows that the court should have entered judgment upon the facts found by it, quieting the title of Thomas P. Martin to all of the community property which remained in his hands. The judgments of the District Court and the Court of Civil Appeals are reversed, and this court proceeding to enter such judgment as the District Court should have entered upon the findings of fact made by that court, it is ordered that Thomas P. Martin have and recover of the defendants in error all of the community property described in the judgment of the District Court, and that he be quieted in his title to the same. It is ordered that Thomas P. Martin pay $25, fee allowed by the District Court to H. M. Chapman, guardian ad litem, to be taxed as costs, and one-third of all costs as the proportion created by the minors, and that said Martin recover two-thirds of the cost of all courts against the other defendants.

*Reversed and rendered.*