## JOHNSON v. COLE. (No. 10479.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 26, 1924.)

1. Husband and wife ☞249—Proceeds of insurance policy on husband's life are wife's separate property.

An insurance policy on a husband's life, in which the wife is named as beneficiary, is not a part of the community estate, and the proceeds thereof are the wife's separate property.

2. Husband and wife ☞268(2)—Insurer's widow not liable for payment of community debts from proceeds of policy.

A widow is not liable for payment of community debts from the proceeds of an insurance policy on her husband's life, naming her as beneficiary.

3. Fraud ☞4—Intent not essential element of fraud.

One may be guilty of legal fraud without intending to defraud.

4. Venue ☞8—Suit against joint payee, retaining entire proceeds of check, held properly brought in county wherein presented to plaintiff for indorsement.

The action of one having an interest in a life insurance policy, of which insured's widow was the beneficiary, in sending to her for indorsement insurer's check, which was payable to them jointly, without informing her of his intention to cash it and keep the entire proceeds, and his agent's statement that he would return to her whatever she was entitled to, *held* actionable fraud, part of which occurred in the county wherein the check was presented by the agent for indorsement, so as to authorize suit therein.

Appeal from Tarrant County Court, W. P. Walker, Judge.

Action by Helene L. Johnson against George W. Cole, Jr. From a judgment sustaining a plea of privilege, plaintiff appeals. Reversed and remanded.

Sawyers & Ambrose, of Fort Worth, for appellant.

H. S. Lattimore, of Fort Worth, for appellee.

BUCK, J. Mrs. Helene L. Johnson sued George W. Cole, Jr., of Belton, Bell county, for the sum of $410.82, and for cause of action she pleaded: That on or about January 29, 1920, the plaintiff was the owner of and entitled to receive the proceeds of a certain policy of life insurance carried by her deceased husband in the New York Life Insurance Company, of New York, in which policy she was the beneficiary. That her said husband died in April, 1920, and that her claim was duly allowed by a check issued therefor by said company. That defendant, at the request of and by reason of some arrangement with her said husband, the exact nature of which was not known to plaintiff, paid certain of the premiums on said policy of insurance to the amount of $198.06, and to secure the repayment of which defendant had an interest in said policy. That said insurance company, on or about June 8, 1920, issued its check for $804, the balance due the beneficiary in said policy, and said check was made payable to plaintiff and defendant, and was sent to defendant for delivery to plaintiff. That defendant sent said check to one Oscar Lusk, his agent at Fort Worth, Tarrant county, with instructions to secure plaintiff's indorsement on said check and return it to him. That said defendant and his said agent conspired together to defraud plaintiff by securing her indorsement to said check and keeping it, so that they could cash it and keep the entire proceeds thereof, and deprive plaintiff of the use and benefit of the same. That in pursuance of said fraudulent purpose on the part of defendant and his said agent said Oscar Lusk told plaintiff that defendant had sent the check to him for her to indorse it. That it would be of no use for him to deliver it to her, because she could not cash it, and the only thing she could do to get her money was to indorse said check and let him send it to Mr. Cole. That said defendant was honest and would treat her right, and would send her whatever was due her out of the proceeds of said check. That said agent, as he had been instructed by defendant, refused to deliver said check to plaintiff, or to give her any information as to how much defendant was claiming or intending to keep out of it, but assured her that defendant would send her a statement, and would treat her right, and would send her such balance of said funds as was due her. That plaintiff was ignorant of how much defendant had paid on said premiums, but had been told by her husband, just before his death, that defendant had paid some of the premiums and was entitled to be repaid out of said policy. That, relying on said representations made by Oscar Lusk, and having no other means of knowing their truth or falsity, plaintiff at the request of said Oscar Lusk indorsed said check and left it in his hands. That said Lusk delivered said check to defendant, and defendant obtained the money for it, and kept and appropriated to his own use and benefit the entire proceeds thereof, to plaintiff's loss and damage in the sum of $410.82. That defendant and his said agent fraudulently

concealed from plaintiff that defendant intended to keep the entire proceeds of said check, and also how much and for what defendant was claiming to be due him out of said check, although plaintiff requested them to inform her as to these matters before indorsing said check. That by such concealment and representations defendant and his said agent misled and deceived plaintiff into believing that, if she indorsed said check as requested, the part of the said money justly due her would be sent her by defendant. That defendant never at any time intended to return to plaintiff any of the proceeds of said check, but at all times intended to keep all the money he received from said check, and defendant well knew that he was not justly entitled to keep all of said money, and particularly knew he was not entitled to keep the $410.82 sued for.

Defendant answered by way of plea of privilege to be sued in Bell county, and the court, after the introduction of evidence, sustained said plea, and from this judgment the plaintiff has appealed.

There is no statement of facts included among the papers in this case, but the court has filed his findings of fact and conclusions of law, and from these findings we note that the court found as follows:

That the insurance company issued its check for $804, payable to plaintiff and defendant, and sent same to defendant at Belton. That about 1909, E. W. Johnson, the husband of plaintiff, made an oral assignment of said policy to defendant to secure the payment of such debts as said Johnson then owed defendant, or might thereafter owe him. That plaintiff was not a party to this assignment, and did not know of it. That defendant delivered said check to Lusk and instructed him to take it to Fort Worth, Tarrant county, and get plaintiff to indorse it and return it to him at Belton. That said defendant did not give said Lusk any further instructions concerning said check, and did not discuss with him anything with regard to how much was due plaintiff, or what would be done with the proceeds of said check, as to paying plaintiff any part of it. That there was no conversation or understanding between the defendant and said Lusk with regard to depriving plaintiff of any of the proceeds of said check. That said Lusk took said check to Fort Worth and asked Mrs. Johnson to indorse it and let him send it to defendant. That plaintiff did not at first comply with this request, and asked Lusk how much she was to get out of it. That said Lusk replied substantially as pleaded by plaintiff. That at the time of this transaction defendant held obligations against E. W. Johnson in excess of the amount of the check, and had no intention of sending plaintiff anything out of said check, but said Lusk did not know this.

That plaintiff believed said representations, and understood them to mean that defendant would send her some part of said check, and relied on same, and indorsed the check and left it with said Lusk.

Among the items which defendant claimed E. W. Johnson owed him was a note for $95.10, dated November 2, 1905, due October 1, 1906, bearing interest at the rate of 10 per cent. from date, and providing that, if said note was not paid at maturity, the interest should be added to the principal, and entire amount should bear interest at 10 per cent. payable annually; that a charge of $410.82 was made by defendant against plaintiff by reason of this note, and said amount was ascertained by calculating interest on same at 10 per cent. compounded annually, and said note was paid out of the proceeds of said check, and was delivered by defendant to plaintiff with said statement of account; that there were other items, to wit, a note for $33.01, dated April 12, 1905, and due September 1, 1905, another note for $500, dated March 7, 1906, due on demand, and one open account for $56 for house rent due in 1906. There was a further item, "To cash, J. H. Bloomer and interest, $478.32." It is not shown in said findings when this cash was furnished, or whether a note was given therefor by Johnson to defendant. Another item is for 10 cash premiums and interest, $327.26. It is not shown when these premiums were advanced or paid by defendant for said E. W. Johnson, if they were so paid for him, but, apparently, some of them, at least, were paid prior to 1915, as there is a credit by cash in that year of $249.80. The court further found that the defendant believed that E. W. Johnson owed him an amount in excess of the $804, and that defendant did not intend to do anything dishonest in having the plaintiff indorse said check and having it returned to him and in cashing it.

[1] An insurance policy on the life of the husband is no part of the community estate of the husband and wife, and the proceeds therefrom become the separate property of the wife. Jones v. Jones (Tex. Civ. App.) 146 S. W. 265, 268; Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585; Mullins v. Thompson, 51 Tex. 7. In the last cited case, the Supreme Court, speaking through Judge Gould, said:

"Insurance policies, other than those classed under the head of endowments, are ordinarily taken out for the benefit of some third person or class of persons, and not as a mere investment for the benefit of the estate of the insured."

In the Succession of Hearing, 26 La. Ann. 326, the court said:

"A policy of insurance is not a piece of property; it is the evidence of a contract, the contract being that a certain sum of money will be paid upon the happening of a certain event,

to a particular person named in the policy, or who may be the legal holder thereof. A creditor may have the life of his debtor insured, even without the consent of his debtor. A husband has the right, we think, to insure his life in the interest of his wife and child, as well as in the interest of his creditor, and his obligation to provide for them in case of his death is certainly well recognized. If the policy issues to the wife, or is properly transferred to her, the amount stipulated therein belongs to her when the event insured against happens, and she cannot be forced to inventory it as a part of her husband's estate. The object he had in view would be defeated if a contrary doctrine prevailed. It is the wife whom the husband seeks to protect when he insures his life in her behalf; otherwise, he would not insure in her name. He has no need to protect his creditors by such a mode, for they can protect themselves."

[2] We do not think that Mrs. Johnson would be liable out of the proceeds of the policy to pay the debts of her husband, even though they were community debts. Moreover it appears that at least some of the items charged against the estate of E. W. Johnson by the defendant, and to the payment of which he applied the proceeds of this policy, were barred by limitation. Furthermore, it appears that the amount of $410.82, at least, was reached by adding the accrued interest to the principal each year. This appears to amount to a usurious interest, and inhibited by law. We believe that the plaintiff below had the right, if venue was properly laid in Tarrant county by reason of the alleged fraud, to have these matters determined by the courts of Tarrant county.

[3] A person may be guilty of legal fraud, though he had no intention of defrauding the other person. In M., K. & T. Ry. Co. v. Maples (Tex. Civ. App.) 162 S. W. 426, writ of error refused 165 S. W. xv, it is said:

"It has been said that fraud cannot be exactly defined so as to fit every case, but, generally speaking, 'fraud is any act, omission, or concealment which involves a breach of legal duty, trust or confidence, justly reposed, and is injurious to another, or by which an undue and unconscientious advantage is taken of another,' Kellum v. Smith, 18 Tex. 835; Horton v. Smith, 145 S. W. 1088; or is 'all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.' 20 Cyc. 8."

In Paschal v. Hudson (Tex. Civ. App.) 169 S. W. 911, writ of error refused 176 S. W. xv, it is said:

"Ordinarily, on the issue of fraudulent representations, it is not necessary to show that the party making them intended to perpetrate a fraud, but if they were such as to create a false impression that caused the other party to act, believing such representations to be true, whether innocently made or not, such representations are fraudulent. Loper v. Robinson, 54 Tex. 510."

In Ramey v. Allison, 64 Tex. 697, a widow gave a deed of trust on the premises she was occupying to secure a debt due from her brother and son-in-law. The lot was sold for the debt, and in a suit against her to try title the widow answered that she was induced to make the deed by the fraudulent representations of the agent, an attorney, of the creditors; that he assured her that the deed was a mere matter of form; that she incurred no risk, since the lot was protected as her homestead; and that the creditors could not, if they would, sell it for the debt. She further alleged that she was only induced to sign it on being satisfied that she incurred no liability, and that it was a mere form. It was held that the allegations were sufficient to sustain a prayer by the widow for relief against her mistake as to the law when she signed the deed. The representations and circumstances under which they were made, in connection with the difficulty of the point of law involved, entitled her to protection as if the mistake had been one of fact. The contract was fraudulently obtained, if the representations were fraudulently made and intended to deceive. If not fraudulently conceived and intended, they were none the less misleading, and induced a fatal mistake on the part of the one relying on their correctness. In either case, the contract was not binding in equity. See Varner v. Carson, 59 Tex. 303; Bullock v. Crutcher (Tex. Civ. App.) 180 S. W. 940.

[4] Since the check of the insurance company was made to plaintiff and defendant jointly, apparently each one of them was entitled to one-half of the amount represented, and, the plaintiff was justified in thinking she would get one-half of the amount when the check was cashed. The court found, as a fact, that the statements made by Lusk, and the failure of Cole and Lusk to inform plaintiff as to the old debts the defendant was claiming, and for which he was intending to pay himself out of the insurance money, did produce a false impression on plaintiff's mind, and that she would not have signed the check if she had known the truth. The court further found that the defendant, at the time he intrusted the check to Lusk and told him to get plaintiff's indorsement thereon, did not intend to send her any part of the proceeds. We are inclined to think that the action of defendant in sending the check to the plaintiff for her indorsement, without informing her of his intention to cash it and keep the proceeds thereof, and the statement of defendant's agent that defendant was honest and would return to the plaintiff whatever she was entitled to out of the check, constituted actionable fraud, and that a part thereof occurred in Tarrant county. Therefore we

hold that the trial court improperly sustained defendant's plea of privilege to be sued in Bell county.

The judgment is reversed, and the cause remanded to Tarrant county for further trial, not inconsistent with this opinion.