R. L. Blaffer, Petitioner, *v.* Commissioner of Internal
Revenue, Respondent.

Sarah Campbell Blaffer, Petitioner, *v.* Commissioner of
Internal Revenue, Respondent.

Docket Nos. 89317, 90945. Promulgated September 28, 1938.

*Walter E. Barton, Esq.,* and *J. L. Block, C. P. A.,* for the petitioners.

*Frank T. Horner, Esq.,* for the respondent.

### OPINION.

Smith: These proceedings, consolidated for hearing, involve gift tax deficiencies for 1934 as follows:

| Petitioner | Docket No. | Gift tax deficiency |
|---|---|---|
| R. L. Blaffer | 89317 | $4,048.37 |
| Sarah Campbell Blaffer | 90945 | 2,201.22 |

In his brief the respondent states the questions presented as follows:

Did the Commissioner properly determine that the petitioner, R. L. Blaffer, residing in Texas, should properly include in his taxable gifts the full value of certain insurance policies, rather than only one-half thereof as contended by petitioner?

The first three issues of the petitions in both proceedings raised questions of value. These matters have been disposed of by the stipulations of the parties. Both petitions also raise the question of the extent of the exemption to which the petitioners are entitled for the year 1934. The respondent concedes the correctness of the petitioners' contentions in this respect. The respondent also concedes the correctness of the contention of R. L. Blaffer as to the exclusions to which he is entitled for the year 1934.

The stipulation and the concessions leave only the question presented above.

The stipulated facts may be summarized as follows:

1. On December 29, 1934, the petitioner, R. L. Blaffer, made an irrevocable assignment of all of his right, title, and interest in and to certain life insurance policies on his own life to R. L. Blaffer & Co., as trustee, for the benefit of four individuals. Sarah Campbell Blaffer did not join in the assignment. The petitioners were married on April 22, 1909, and subsequent to that date premiums on the policies were paid from the community property of the petitioners.

R. L. Blaffer reported one-half of the values of the policies in his gift tax return for 1934.

2. The following shows the names, numbers, dates of issuance, face values, and values of the policies as of December 29, 1934:

| Company | Policy number | Date | Face value | Value |
|---------|---------------|------|------------|-------|
| Equitable Life Ins. Co | 928225 | 6-28-1899 | $1,000 | $733.59 |
| State Mutual Life Ins. Co | 41019 | 2- 4-1908 | 10,000 | 5,569.20 |
| Aetna Life Ins. Co | 5357 | 4-15-1932 | 20,000 | None |
| Pacific Mutual Life Ins. Co | 385056 | 2- 4-1920 | 50,000 | 23,581.95 |
| Seaboard Life Ins. Co | 192 | 12- 7-1925 | 25,000 | 6,600.94 |
| Total gift | | | | 36,485.68 |

3. In the case of each policy the insured, R. L. Blaffer, had the right to revoke the beneficiary and to borrow money thereon until the date of the irrevocable assignment thereof on December 29, 1934. Sarah Campbell Blaffer, the wife of R. L. Blaffer, was named beneficiary in all of the policies, except as hereinafter stated, from the time the policies were written until the assignment thereof on December 29, 1934. In Equitable Life Insurance Co. policy No. 928225 the sister of R. L. Blaffer was named beneficiary until June 26, 1915, when the name of the beneficiary was changed to the name of the insured's wife, Sarah Campbell Blaffer, and no change was made in the name of the beneficiary thereafter until the transfer of the policy on December 29, 1934. In State Mutual Life Insurance Co. policy No. 41019 the sister of R. L. Blaffer was named beneficiary. The name of the beneficiary was changed to the insured's wife, Sarah Campbell Blaffer, on or about April 22, 1909, and no further change was made in the name of the beneficiary until the transfer of the policy on December 29, 1934. The policies were 20-pay life policies, except Pacific Mutual Life Insurance Co. policy No. 385056 and Aetna Life Insurance Co. policy No. 5357, which were ordinary life. At the time of the marriage of the petitioners on April 22, 1909, the value of Equitable Life Insurance Co. policy No. 928225 was $192, and on that date State Mutual Life Insurance Co. policy No. 41019 had no value whatever.

The Board makes the additional following finding of fact:

The insurance policies set forth in paragraph 2 above were the separate property of the petitioner, R. L. Blaffer, and the value thereof is properly includable in his taxable gifts for the year 1934.

It is the contention of R. L. Blaffer that only one-half of the value of the policies transferred to the insurance trust was taxable to him, inasmuch as the premiums after his marriage were paid from community property, and that he did not own a greater interest in the policies than one-half of the cash surrender value thereof.

The status of insurance policies under the Texas law and the decisions of the Texas courts is well established. The leading Texas case is *Martin* v. *McAllister* (1901), 94 Tex. 567; 63 S. W. 624. In that case Mrs. Martin had died and her surviving husband had applied the community assets, including the homestead, to the payment of community debts. He retained as his own the proceeds of a life insurance policy upon Mrs. Martin's life which had been made payable to him and applied these to the payment of the community debt. The children challenged the father's right so to do. The question in the case, so far as this inquiry is presently concerned, was whether the proceeds of the policies upon the life of Mrs. Martin were the separate funds of her husband. The following are pertinent extracts from the court's decision:

The money derived from the policy on the life of Mrs. Martin was not acquired during the marriage, but was received by the husband after her death, in pursuance of a contract of insurance made during her life, and belonged to Thomas P. Martin in his separate right. * * * *In the Succession of Hearing,* above cited, the Supreme Court of Louisiana held that the proceeds of a policy of insurance on the life of the husband in favor of the wife were not the community property of the spouses, and were not liable for the debts of the husband. That court said:

"* * * If the policy issues to the wife, or is properly transferred to her, the amount stipulated therein belongs to her when the event insured against happens, and she cannot be forced to inventory it as a part of her husband's estate. The object he had in view would be defeated if a contrary doctrine prevailed. It is the wife whom the husband seeks to protect when he insures his life in her behalf; otherwise, he would not insure in her name. He has no need to protect his creditors by such a mode, for they can protect themselves."

It is contended by the defendants in error that the husband could not appropriate the community funds to his own use in the purchase of this contract without the consent of his wife; but our statute specially provides that the husband shall have the sole right of control of the community property, and it has been uniformly held that such control cannot be interfered with unless it is exercised in fraud of the rights of the wife. * * *

The case of *Rowlett* v. *Mitchell*, 52 Tex. Civ. App. 589; 114 S. W. 845, was one in which a widow sued to recover one-half of the proceeds of a life insurance policy upon the life of her deceased husband, which was payable to his children by his first wife. The policy was taken out before his second marriage, but after that marriage he continued to pay the premiums thereon and used about $73.20 of the community funds of the second marriage in paying the premiums due on the policy. The policy was for $1,000 and the entire community estate was worth only about $450. The trial court concluded that the facts did not show any fraud upon the rights of the wife, and that the children named in the policy were entitled to the proceeds thereof. The appellate court, in affirming the judgment, said:

We think the evidence was sufficient to support the conclusion reached by the trial court that the use by Shoulders of community funds of his second marriage to pay the premiums on the policy in favor of the children of his first marriage was not with intent to defraud appellant as the owner of an interest in such community funds. Therefore it must be said that in rendering the judgment complained of the trial court did not err; for the right of the husband to dispose of community funds is an absolute one, so long as it is not exercised for the purpose of defrauding the wife. Sayles' Ann. Civ. St. 1897, art. 2968; *Stramler* v. *Coe*, 15 Tex. 215; *Martin* v. *McAllister*, 94 Tex. 567, 63 S. W. 624. * * *

* * * The right of the husband to dispose of the community estate except for the purpose of defrauding his wife is an absolute one only while the marriage relationship exists. While that relationship continues, if not under a disability—as lunacy, for instance—he may expend their joint estate ever so unwisely, may squander it in "riotous living," or may give it away to objects meritorious or without merit, yet she cannot be heard to complain. It is only when he disposes of it for the purpose of defrauding her that the law will afford her relief. * * *

In *Jones* v. *Jones* (1912), 146 S. W. 265, the court cited and quoted *Rowlett* v. *Mitchell*, *supra*, with approval, and continued in its opinion as follows:

Our Supreme Court, in the case of *Martin* v. *McAllister*, has held that when insurance is taken upon the life of the wife, payable to the husband, and premiums paid out of the community funds, the proceeds of the policy become the separate property of the husband. The court stated that it saw no ground in the facts of the case to impeach the action of the husband as fraudulent towards his wife, and announced the doctrine that, as the proceeds of a policy upon the life of the husband or wife could not become the property of either during the lifetime of both of them, it cannot be held to be community property, and is therefore the separate property of the one to whom it is payable.

*Whiteselle* v. *Northwestern Mutual Life Insurance Co.* (1920), 221 S. W. 575, involved the question of whether the divorced wife of the decedent retained any interest in an insurance policy in which he had irrevocably designated her as the beneficiary. While the policy did not specifically provide for a cash surrender value, it did as a matter of fact have such a value. The court, citing *Martin* v. *McAllister*, *supra*, held that the use of community funds in payment of premiums for insurance upon the life of one spouse in favor of the other does not, in the absence of fraud, create in the community the right to reimbursement for the funds so used. The court stated:

* * * Under the insurance contract, no surrender or loan value existed as a matter of right; and the only contingency upon which liability of any sort could arise by virtue of the terms of the policy was the death of the insured. It was authoritatively decided in *Hatch* v. *Hatch* [35 Tex. Civ. App. 373; 80 S. W. 411] that the surrender value of a policy of this character is not property the ownership of which will be determined by the ownership of the fund from which the premiums are paid; that the existence of such surrender value does not change the character of the contract as being in any sense other than one purely of insurance; and that the only interest one

could have in such a policy would be by virtue of some insurable interest in the life of the insured, as distinguished from a property right in the policy itself.

To the same effect as the foregoing is *Johnson* v. *Cole* (1924), 258 S. W. 850. The court there held that any insurance policy on the life of the husband is no part of the community estate of the husband and wife, citing with approval *Jones* v. *Jones, supra,* and *Martin* v. *McAllister, supra.*

In *Fain* v. *Fain* (Tex. Civ. App., 1936), 93 S. W. (2d) 1226, the court summarized rules relating to life insurance policies in Texas as follows:

We believe it clear that the life insurance policies that were made payable to the defendant's estate were his separate property, in which the community estate could have no interest, either legal or equitable, *Martin* v. *McAllister,* 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585; *Jones* v. *Jones* (Tex. Civ. App.) 146 S. W. 265.

In *Whiteselle* v. *Northwestern Mutual Life Ins. Co.* (Tex. Com. App.) 221 S. W. 575, 576, it was specifically held that "the use of community funds in payment of premiums for insurance upon the life of one spouse in favor of the other does not in the absence of fraud, create in the community the right to reimbursement for the funds so used." And further: "Recovery upon the remaining ground, namely, that the cash surrender value of the policy at the date of the divorce was community property, a one-half interest in which was decreed in the wife, is precluded under the decision in *Hatch* v. *Hatch* [35 Tex. Civ. App. 373, 80 S. W. 411], in which a writ of error was denied.

It is quite evident from the foregoing that in Texas a policy of life insurance taken out by one spouse in favor of the other, and which is not in fraud of the rights of the other, is separate property and there is no right in the community for reimbursement of the amounts expended in payment of premiums.

In support of their contention the petitioners cite *Estate of Louisa Morris Carroll,* 29 B. T. A. 11, the headnote of which reads as follows:

Subsequent to marriage, a husband took out four insurance policies on his own life, with the proceeds payable to his estate. While such policies were in effect, the wife of the insured died. *Held,* that under the law of Louisiana the cash surrender value of such policies falls into the estate of the marital community upon the dissolution thereof by death, and that one half of such value should be included in the estate of the deceased spouse for Federal estate tax purposes.

In our opinion we stated:

Under the laws of Louisiana it appears to be well settled that an insurance policy taken out by the husband and payable to his estate is community property. In *Succession of Buddig,* 108 La. 406; 32 So. 361, the court, in its syllabus, said: "A policy of life insurance issued to a married man during the existence of the community and made payable to his executor, administrators and assigns, falls into the community, and not his separate estate on the dis-

solution of the former by death." In the body of the opinion the court said: "He [the husband] has no right to transact so as to build up a separate estate to the disadvantage of the community. Everything left at dissolution is presumed common." At section 485, McKay on Community Property, a very generally accepted authority, the writer says: "So far as the author has been able to discover in the authorities, the only case where an insurance policy has been held to be common is where the husband during marriage, procures insurance on his own life payable to himself, his executors, administrators or assigns."

In *Newman* v. *Commissioner*, 76 Fed. (2d) 449, the court held that under Louisiana law, where a husband, during the existence of the community, takes out a life insurance policy payable to the wife as beneficiary, but with right reserved to change the beneficiary, and pays premiums out of community, although the proceeds become the wife's separate property at the husband's death, the transaction is regarded as a gift by husband to wife, and that the estate of neither husband nor wife is regarded as having paid premiums so as to be entitled to reimbursement on account of their payment. The court stated:

We raise the question, however, not to decide, but to reserve it. For we think, in the light of the settled law as to these premium payments, that there is no basis for the claim that they fall within the regulations invoked. That law is that when, during the existence of the community, a husband, as here, takes out a policy payable to his wife as beneficiary, but with the right reserved to change, and pays the premiums out of the community, though the proceeds at his death become her separate property, Succession of Desforges, 135 La. 49, 50, 64 So. 978, 52 L. R. A. (N. S.) 689; *Nulsen* v. *Herndon*, 176 La. 1097, 1098, 147 So. 359, 88 A. L. R. 236; *Sizeler* v. *Sizeler*, 170 La. 128, 127 So. 388; *Douglass* v. *Equitable Life Assur. Soc.*, 150 La. 519, 90 So. 834, the transaction is regarded as a gift by the husband to the wife, and the estate of neither is regarded as having paid the premiums so as to be entitled to reimbursement on account of their payment. *Kelly* v. *Kelly*, 131 La. 1024, 60 So. 671; *Succession of Bofenschen*, 29 La. Ann. 711; *Martin* v. *McAllister*, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585; *Whiteselle* v. *N. W. Mut. Life Ins. Co.* (Tex. Com. App.) 221 S. W. 575.

We are of the opinion that the decision by the Board in *Estate of Louisa Morris Carroll, supra*, which involved the law of Louisiana, does not control the situation here presented. Nor is it of consequence that the community property laws of the State of Washington lay down a different rule from those of the courts of the State of Texas, cf. *Lang* v. *Commissioner*, 304 U. S. 264, or that the laws of the State of California appear to be like those of Washington. Thus, in *New York Life Insurance Co.* v. *Bank of Italy*, 214 Pac. 61, it is said: "The chose in action represented by the policy belonged to the community because of the fact that community funds had been paid as the consideration for its acquisition."

We can not doubt that as a result of the assignment by R. L. Blaffer the insurance trust acquired full title to the insurance policies

transferred. There was no transfer to the insurance trust by the wife. The corollary of petitioner R. L. Blaffer's contention would appear to be that the wife, Sarah Campbell Blaffer, was liable to gift tax upon one-half of the value of the insurance policies assigned. But no contention is made that she is so liable. She made no gift to the insurance trust.

We conclude that the insurance policies here involved were the separate property of the petitioner, R. L. Blaffer, and should be included in his taxable gifts for the year involved.

Reviewed by the Board.

*Judgments will be entered under Rule 50.*