ESTATE OF CYPRIAN A. SPORL, SR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92588.  Promulgated November 22, 1939.

*Arthur A. Moreno, Esq.*, and *F. W. Gaudin, Esq.*, for the petitioner.
*Joe D. Hughes, Esq.*, and *William P. Blake, Esq.*, for the respondent.

#### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in estate tax of the estate of Cyprian A. Sporl, Sr., of $5,864.02. The pleadings present the following issues:

1. The deductibility of certain administration expenses, allowed to the extent of one-half by the respondent—the estate consisting entirely of community property—but claimed in whole by the estate.

2. The right of the estate to a credit for inheritance taxes paid to the State of Louisiana.

3. The inclusion in the gross estate of the value of certain second mortgage bonds of the Shipside Storage Co.  (This issue is raised affirmatively by the respondent in an amended answer.)

---

4. Whether there should be included in the gross estate all or only one-half of the excess over $40,000 of the proceeds of insurance policies on decedent's life, where the policies were taken out by the decedent after marriage and the premiums on such policies were paid out of community income; and whether, if only one-half of the proceeds is to be included in the gross estate, the $40,000 exemption should apply to such one-half or against the entire amount.

The decedent, Cyprian A. Sporl, Sr., died intestate, a resident of New Orleans, Louisiana, on January 27, 1936. No letters of administration were ever issued. The heirs at law, the widow, and decedent's two sons were placed in possession of the estate, all of which consisted of community property, by order of the Civil District Court, New Orleans, Louisiana, and they are the petitioners herein.

The issues raised by the proceeding will be considered in order.

1. There was reported in the estate tax return filed by the petitioners herein a gross estate of $316,758.71, representing one-half of the total value of the estate which the decedent and his wife owned in community. The estate consisted of real property, stocks and bonds, and other miscellaneous properties.

Among the deductions claimed in the return under administration expenses were executors' commissions of $1,585 and attorneys' fees of $20,000. The respondent in his audit of the return allowed one-half of each of these amounts. He determined a net estate of $196,090.31 under the 1926 Act and a net estate of $256,090.31 under the 1932 Act.

Under section 303 of the Revenue Act of 1926 an estate is permitted to deduct from the gross estate:

(a) In the case of a resident * * *—
(1) Such amounts for funeral expenses, administration expenses, claims against the estate, * * * as are allowed by the laws of the jurisdiction, * * * under which the estate is being administered, * * *

In his deficiency notice the respondent states:

You contend: "The attorney's fee and administration expenses should be allowed in full, because said expenses were incurred solely in administering the affairs of the decedent, Cyprian A. Sporl, Sr., and for the prime purpose of segregating the Estate of decedent from the vested one-half interest of his surviving widow in order to vest same in the heirs of said decedent, * * *." For the purpose of Federal estate tax the deductions are limited to the amounts payable on account of decedent's estate, which does not include the widow's community interest. As the tentative determinations were made on that basis, no adjustment is in order.

In their petition the petitioners state:

The attorney's fee and administration expenses should be allowed in full, because said expenses were incurred solely in administering the affairs of the decedent, Cyprian A. Sporl, Sr., and for the prime purpose of segregating

the Estate of decedent from the vested one-half interest of his surviving widow in order to vest same in the heirs of said decedent.

Said attorney's fees and administration expenses should be allowed in full because same were necessary for the immediate purpose of determining the inheritance taxes due the Treasury of the United States and the State of Louisiana.

All of the material facts stated in the petition have been denied by the respondent in his answer.

No evidence has been offered and no argument has been made in the brief of the petitioners in support of the allegation of error as to the disallowance of one-half of the amount of executors' commissions and one-half of attorneys' fees.

If the total amounts of executors' commissions and attorneys' fees were concerned with the administration of the one-half of the community property that was owned by the decedent, the full amounts paid would be legal deductions from the gross estate. *Lang's Estate v. Commissioner*, 97 Fed. (2d) 867. We can not say, however, upon the evidence of record that the respondent was in error in disallowing the deduction of one-half of the amounts of executors' commissions and attorneys' fees. The determination of the respondent upon the point in question is affirmed on failure of proof on the part of the petitioners to show error in the respondent's determination.

2. At the hearing before the Board proof was submitted of payment to the State of Louisiana of $3,484.06 inheritance taxes in respect of the property included in the decedent's gross estate. Respondent concedes in his brief that such taxes are allowable as a credit to the extent proved.

3. The estate owned $46,000 of Shipside Storage Co. second mortgage 6 percent bonds dated January 1, 1932. They were appraised as having no market value and were so returned. The respondent contends that they were worth either their face value or 15 percent of their face value, which was the price paid for them by the decedent in December 1933.

Interest upon the bonds was paid throughout the year 1936. The paying corporation was not, however, earning sufficient amounts for the payment of the interest. The corporation was advised by counsel that in the determination of earnings for the payment of interest it was not necessary to provide for depreciation, and accordingly interest was paid long after there were any earnings available for such payment.

No interest has been paid on the bonds since 1936. In 1938 efforts were being made to reorganize the corporation under section 77 (b) of the Bankruptcy Act.

The Shipside Storage Co. had outstanding an issue of first mortgage bonds in the amount of approximately $296,000. The fair

market value of its property in 1936 was less than the amount of the first mortgage bonds outstanding. The Canal Bank & Trust Co. in liquidation in 1936 owned $100,000 par value of the second mortgage bonds. In the latter part of 1936 or in 1937 it made an application for a loan from the Reconstruction Finance Corporation. In connection with such application the second mortgage bonds in question were listed as having a nominal value. The Reconstruction Finance Corporation refused to place any value upon the bonds and returned them to the petitioner with the notation "No loan value assigned" and held that they were not eligible for collateral purposes. The entire evidence in the case shows that the bonds were absolutely unsalable in 1936.

Article 13 of Regulations 80 (1934 Edition) provides that property is to be included in the gross estate at "the fair market value thereof at the time of decedent's death."

By an amended petition the respondent claims that these bonds had a fair market value equal to their par value. On brief he contends that the value was at least 15 percent of the par value. The burden of proof to show that the bonds had a fair market value at the date of decedent's death is upon the respondent. The respondent has not met this burden. Accordingly his claim that the bonds should be included in the gross estate either at their par value or at 15 percent of such value is not sustained.

4. The remaining issue is as to the amount to be included in the gross estate in respect of the value of six policies of insurance on decedent's life taken out by the decedent. All of the policies were taken out on application of the decedent alone after his marriage to Adrienne de Lappe, who survived him, and all premiums were paid from community funds. The aggregate face value of the policies was $100,990. Five of the policies were issued by the Penn Mutual Life Insurance Co. of Philadelphia on February 25, 1925, and the sixth by the Massachusetts Mutual Life Insurance Co. of Springfield, Massachusetts, on October 24, 1927. In one of the policies for $25,000 the beneficiary named in the policy was "Adrienne DeL. Sporl, the insured's wife, if living; otherwise to Cyprian A. Sporl, Jr., and Harold D. Sporl, the insured's sons, equally or to the survivor of them." In two of the policies, one for $10,440 and one for $10,550, the insurance company was to retain the proceeds and pay the interest thereon to the widow for life, with remainders over to the two sons of the decedent. In the fourth policy, for $25,000, the income for life was to be paid to the decedent's mother, with the remainder over to the decedent's four sisters. The fifth policy, for $15,000, was payable to one of the sons, and the sixth policy, for $15,000, to the other when each arrived at a certain age. In each of the policies

there was reserved to the insured the right to change the beneficiary, to surrender and receive the surrender value of the policy, or to use it as collateral on a loan. The decedent died without exercising any of those rights.

In the estate tax return the policies were listed as having a face value of $100,970, whereas the amount should have been $100,990. They were included in the net estate of decedent at one-half of $60,970 (the excess over $40,000) or at $30,485. In the determination of the deficiency the respondent has valued the policies at $100,990 and has included in the net estate the excess of that valuation over $40,000. The total valuation of the policies is not questioned. The petitioners contend that only one-half of the value of the policies ($50,495) less $40,000, or $10,495, is includable in the decedent's net estate.

Section 302 of the Revenue Act of 1926 provides in part as follows:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

Section 302 (g) of the Revenue Act of 1926 is the same as section 302 (g) of the Revenue Act of 1924 and has not been changed or amended by any of the subsequent acts and the provision was in force and effect both at the time the policies were taken out by the decedent and at the date of his death.

As was stated by the United States Circuit Court of Appeals for the Fifth Circuit in *Igleheart* v. *Commissioner*, 77 Fed. (2d) 704, the manifest purpose of section 302 (g) "is to include in the decedent's estate for purposes of the tax the proceeds of all insurance on his life receivable under policies acquired through expenditure by him." See *Chase National Bank* v. *United States*, 278 U. S. 327. Since the decedent had no separate estate, premiums were of necessity paid out of the community estate. In view of this fact it is the petitioner's contention that only one-half of the value of the policies is to be taken into account under section 302 (g) and that out of that one-half value of the policies should come the specific exemption of $40,000.

The question present in this proceeding is substantially the same as that which was presented in *Newman* v. *Commissioner* (C. C. A., 5th Cir.), 76 Fed. (2d) 449. The decedent in that case, Edgar Newman, died on March 9, 1928. At the time of his death there were in existence 15 life insurance policies on his life. The decedent retained the right to change the beneficiary up to the date of his

death. The court held that the entire proceeds of the policies were includable in the gross estate of the decedent, and in the course of its opinion it said:

Appellants with great confidence press the further argument that the case presented is, within articles 25 and 28, Treasury Regulations [70], a case of the payment of premiums in part by the beneficiary and in part by the decedent. They say this results from the operation in Louisiana of the community property system. That under its operation, as stipulated, the premiums the husband paid must be regarded as paid with community funds and therefore one-half by the insured, and one-half by his beneficiary. That this being so, it must be held that, within the meaning of the regulations, the beneficiary paid one-half of the premiums, and the decedent only one-half. That this contention is more logically than legally sound, we think a little reflection will show. We think it may well be doubted whether these regulations would be valid if so construed. They were adopted under a statute which does not in terms authorize any diminution on account of community payment of premiums but on the contrary, in plain terms, requires that all over $40,000 of the proceeds of policies taken out by the insured in favor of the beneficiary, be included in his gross estate. In this view, it may well be doubted whether the regulations if so construed, would not be beyond administrative power. "The only authority conferred, or which could be conferred, by the statute is to make regulations to carry out the purposes of the act—not to amend it." *Miller* v. *United States*, 55 S. Ct. 440, 442.

We raise the question, however, not to decide, but to reserve it. For we think, in the light of the settled law as to these premium payments, that there is no basis for the claim that they fall within the regulations invoked. That law is that when, during the existence of the community, a husband, as here, takes out a policy payable to his wife as beneficiary, but with the right reserved to change, and pays the premiums out of the community, though the proceeds at his death become her separate property, *Succession of Desforges*, 135 La. 49, 50, 64 So. 978, 52 L. R. A. (N. S.) 689; *Nulsen* v. *Herndon*, 176 La. 1097, 1098, 147 So. 359, 88 A. L. R. 236; *Sizeler* v. *Sizeler*, 170 La. 128, 127 So. 388; *Douglass* v. *Equitable Life Assur. Soc.*, 150 La. 519, 90 So. 834, the transaction is regarded as a gift by the husband to the wife, and the estate of neither is regarded as having paid the premiums so as to be entitled to reimbursement on account of their payment. *Kelly* v. *Kelly*, 131 La. 1024, 60 So. 671; *Succession of Bofenschen*, 29 La. Ann. 711; *Martin* v. *McAllister*, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585; *Whitesell* v. *N. W. Mut. Life Ins. Co.* (Tex. Com. App.) 221 S. W. 575.

In the light of this rule of law, it would be a strained construction creating an unwarranted lack of uniformity, and raising grave doubts as to their validity, which would give to these regulations the meaning contended for. We think it our duty to avoid such construction.

An application for certiorari in that case was denied by the Supreme Court, 296 U. S. 600.

The petitioners contend that this decision of the United States Circuit Court of Appeals for the Fifth Circuit in the *Newman* case can not stand in the light of the decision by the Supreme Court in *Lang* v. *Commissioner*, 304 U. S. 264. In that case the decedent died in 1929, a resident of the State of Washington, which is a community property state. There were several insurance policies on his

life, made payable to his wife and children, which had been taken out after marriage while decedent was a resident of that state and on which the premiums had been paid out of community funds. The opinion of the Supreme Court answered certain questions which had been propounded to it by the United States Circuit Court of Appeals for the Ninth Circuit. The Court stated:

The court below concluded that the laws of Washington established a community between spouses which is a separate entity, "just as a corporation or an association," and that life insurance purchased with its funds is community property whose character the husband cannot defeat through change of beneficiary.

Accepting as correct, for present purposes this construction of the local law, also treating the facts disclosed by the certificate as the essential ones, we come to consider the questions submitted for instructions which are restated in order more definitely to indicate our understanding of their significance.

The Court then cited article 25 of Regulations 70 to the effect that:

"* * * Where a portion of the premiums were paid by the beneficiary and the remaining portion by the decedent the insurance will be deemed to have been taken out by the latter in the proportion that the premiums paid by him bear to the total of premiums paid."

The above provision of Regulations 70 was omitted from Regulations 80 (1934 Edition), approved November 7, 1934. It substitutes for what might be termed the "payment of premiums" test of the old regulation the "legal incidents of ownership" test. The new regulation was in effect when the Supreme Court decided the *Lang* case, but the Court deemed it unnecessary to pass upon its validity, saying:

Treasury Regulations 70 were in force when Lang died and are applicable to his estate. It is unnecessary for us to consider the meaning, validity or effect of the changes introduced by Regulations 80.

The Court further said:

Articles 25 and 28 of Regulations 70 define the words "policies taken out by the decedent upon his own life." Earlier regulations gave the same definition. Nothing else appearing, it must be treated as approved by Congress. *Helvering* v. *Bliss*, 293 U. S. 144, 151, 55 S. Ct. 17, 20, 79 L. Ed. 246, 97 A. L. R. 207. Counsel for the Commissioner suggest that it is at variance with the statute, unreasonable and without effect; but we think this objection is clearly untenable.

   *       *       *       *       *       *       *

Under the community property statutes of Washington, Rem. Rev. Stat. Wash. § 6892 et seq., as interpreted below, one-half of the amounts of community funds applied to payment of premiums was property of the wife. To that extent she paid these premiums. Where she is the beneficiary, under the words of the Regulations she became entitled to the proceeds of the policy in proportion to the amount so paid.

Where children were named beneficiaries and premiums were paid from community funds the situation is not within the precise words of the Regulations; but the rather obvious reason underlying the definition of what constitutes a policy "taken out by the assured" should be respected. In the

absence of a clear declaration it cannot be assumed that Congress intended insurance bought and paid for with the funds of another than the insured and not payable to the latter's estate, should be reckoned as part of such estate for purposes of taxation. See *Igleheart* v. *Com'r.*, 5 Cir., 77 F. 2d 704, 711.

It will be noted from the above excerpts from the opinion of the Supreme Court in the *Lang* case that its opinion was predicated upon the laws of the State of Washington as interpreted by the Supreme Court of that state and upon the Commissioner's regulations. The Supreme Court said that under the laws of the State of Washington "life insurance purchased with its [community] funds is community property whose character the husband cannot defeat through change of beneficiary."

We think that the laws of the State of Louisiana, as interpreted by its Supreme Court, are materially different from the laws of the State of Washington.

In *Sizeler* v. *Sizeler*, 170 La. 128; 127 So. 388, it was said:

As the proceeds of life insurance policies form no part of the estate of the deceased, and inure to the beneficiary *"directly and by the sole terms of the policy itself,"* the right of the defendant to the avails of the policies in this case does not arise from legal coverture, nor from the civil effects of marriage contracted in good faith, but solely from the terms of the policies in which she has been named the beneficiary by the decedent. * * *

In *Douglass* v. *Equitable Life Assurance Society*, 150 La. 519; 90 So. 834, it was stated as the settled law of Louisiana that where the wife is named beneficiary in an insurance policy on the husband's life the husband may change the beneficiary, if the right to do so is reserved to him in the policy contract, so as to cut off the wife's interest in the proceeds of the policy.

At the date of the death of the decedent, January 27, 1936, Regulations 80 were in force, article 25 of which reads as follows:

Art. 25. *Taxable insurance.*—The statute provides for the inclusion in the gross estate of insurance taken out by the decedent upon his own life, as follows: (a) All insurance receivable by, or for the benefit of, the estate; (b) all other insurance to the extent that it exceeds in the aggregate $40,000.

The term "insurance" refers to life insurance of every description, including death benefits paid by fraternal beneficial societies, operating under the lodge system. Insurance is considered to be taken out by the decedent in all cases, whether or not he makes the application, if he pays the premiums either directly or indirectly, or they are paid by a person other than the beneficiary, or decedent possesses any of the legal incidents of ownership in the policy. Legal incidents of ownership in the policy include, for example: The right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. The decedent possesses a legal incident of ownership if the rights of the beneficiaries to receive the proceeds are conditioned upon the beneficiaries surviving the decedent.

The respondent's argument in this case is that since the decedent had the right up to the date of his death to change the beneficiary and to give the insurance proceeds to any person whom he might select without the wife's consent, the total value of the policies should be included in the gross estate. This clearly is the law which would apply to the estate of a decedent in a noncommunity property state. It appears to us that it was the intention of Congress to take into account all policies of insurance on the life of a decedent where at least the decedent had legal incidents of ownership in the policies at the date of his death. *Chase National Bank* v. *United States, supra; Old Point National Bank, Executor*, 39 B. T. A. 343. We are of the opinion that the respondent did not err in his determination that $60,990 should be included in the decedent's net estate in respect of the six insurance policies in question.

We have carefully considered the last paragraph of the Supreme Court's opinion in the *Lang* case, in which it was said:

* * * In the absence of a clear declaration it cannot be assumed that Congress intended insurance bought and paid for with the funds of another than the insured and not payable to the latter's estate, should be reckoned as a part of such estate for purposes of taxation. * * *

The language of section 302 (g) of the Revenue Act of 1926, which was construed by the Supreme Court, has not been changed since then. But we are uncertain as to whether the observation of the Court controls the instant proceeding in the light of the Commissioner's amended regulations. We think that it does not. If the value of insurance policies on the life of a decedent is includable in the net estate only in the proportion that the amount of premiums paid by the decedent out of his separate estate bears to the entire amount of premiums paid, many questions difficult of solution are presented—as, for instance, where the premiums are paid by the beneficiary out of funds borrowed or given to the beneficiary by the insured.

The respondent's determination in this case is clearly warranted by the decision of the United States Circuit Court of Appeals for the Fifth Circuit in *Newman* v. *Commissioner, supra*. We believe that we should follow that opinion until the Supreme Court has expressed its dissent therefrom, especially in view of the change in the regulations contained in article 25 of Regulations 80.

In view of our holding in this case, it is unnecessary to consider the petitioners' contention that the $40,000 specific exemption should be deducted from one-half of the face value of the policies and only $10,495 be included in the net estate. Although this point lurked in the *Lang* case, which was decided by the United States Circuit Court of Appeals for the Ninth Circuit in *Lang's Estate* v. *Commissioner,*

*supra*, it does not seem to have been specifically considered, the court simply holding that one-half of the excess of $40,000 of the life insurance policies in that case was to be included in the net estate of the decedent.

Reviewed by the Board.

*Decision will be entered under Rule 50.*