### MRS. LENA ROWLETT v. B. G. MITCHELL, GUARDIAN.

#### Decided December 10, 1908.

**1.—Husband and Wife—Control of Community Funds.**

The right of the husband to dispose of community funds during marriage is absolute, so long as it is not exercised for the purpose of defrauding the wife; she cannot follow and recover such funds lawfully disposed of by the husband for other purposes than the benefit of the community estate.

**2.—Same—Insurance.**

A husband, of limited means, paid premiums aggregating $73.20 out of community earnings upon an insurance policy for $1,000, taken out before marriage for the benefit of his children by a former wife. Held, that the wife had no right to recover any part of the proceeds of such policy, which had been collected by the guardian of the children after the father's death. It was his right and duty to provide for the children; the continued payment of premiums on a policy for their benefit evidenced such purpose, and not that of investment for the benefit of the community; and no intent to defraud the wife appeared therefrom.

**3.—Same—Case Limited.**

The case of Martin v. Moran, 11 Texas Civ. App., 509, distinguished and limited.

Appeal from the County Court of Hunt County. Tried below before Hon. J. W. Manning.

*Tinley & Hall,* for appellant.—The court erred in its first conclusion of law, which is as follows: "The rights of the beneficiaries in said policy vested in them at the time of its issuance, and at the death of their father, they had the right to the benefits named in the policy." Because it was only conditional and a contingent right, dependent upon a continuation of the payment of monthly premiums until his death, and to make these payments with the community funds of himself and the wife would inure to the wife's benefits, and it was a fraud upon the wife to use her funds in the community estate. (Wilmurth v. Tompkins, 22 Texas Civ. App., 87; Waggener v. Isenee, 11 Texas Civ. App., 491; Wooters v. Hale, 83 Texas, 564.)

*J. S. Sherrill* and *B. Q. Evans,* for appellee.—The court correctly held that the deceased, J. W. Shoulders, had the right to appropriate a part of the community property to purchase the insurance for the benefit of his minor children. Martin v. McAllister, 94 Texas, 567.

WILLSON, CHIEF JUSTICE.—In November, 1901, J. W. Shoulders, then a widower and the father by his deceased wife of two small children, whose ages are not shown by the record, became a member of the Woodmen of the World, and as such member received a policy insuring his life in the sum of $1000 in favor of his said two children, named in the policy as the beneficiaries thereof. At that time he held as belonging to the community estate between himself and his deceased wife horses, mules and other personal property of the value of about $450. January 25, 1902, he was married to appellant, with whom he lived until his death, which occurred February 25, 1905, and by whom he had two children. At the time of his death he and his surviving wife owned as the community estate between them personal property worth about $450, all of which the trial court found was applied by his surviving wife to her own use. As further found by the trial court, the policy issued to Shoulders was "an ordinary life policy," and the premium on same was $1.20 per month and was payable monthly. Before his marriage to appellant he had made two such monthly payments of premiums accrued. After his marriage to appellant he paid, with funds acquired by him while they were married, monthly premiums on the policy as they accrued, aggregating at the time of his death the sum of about $73.20. He was a tenant farmer. His cotton crops grown and marketed while he and appellant were husband and wife averaged in value each year about $300. The value of other crops grown by him is not shown in the record. After the death of Shoulders, appellee, the grandfather of the children of Shoulder's first marriage, qualified as guardian of their estate, and as such guardian received the proceeds of the policy

on their father's life issued in their favor. The suit was brought by appellant against appellee as guardian to recover one-half of the proceeds of the policy. In her petition she alleged the payment as stated above of premiums on the policy with funds belonging to the community estate between herself and her deceased husband, and further alleged that deceased after she married him often promised her to have the policy changed and made payable to her. On the foregoing facts, as found by him, the trial court concluded as matter of law: 1. That the rights of the beneficiaries in said policy vested in them at the time it was issued, and at the death of their father they had the right to the benefit named in the policy. 2. That "J. W. Shoulders had the right to take from the community funds of himself and plaintiff enough to pay the monthly premiums on said policy accruing after the marriage with plaintiff. It was a proper exercise of his control over the community property, and was not a fraud on the rights of plaintiff." The appeal is from a judgment entered in appellee's favor in accordance with the conclusions reached by the court.

*After stating the case:*—We think the evidence was sufficient to support the conclusion reached by the trial court that the use by Shoulders of community funds of his second marriage to pay the premiums on the policy in favor of the children of his first marriage was not with intent to defraud appellant, as the owner of an interest in such community funds. Therefore it must be said that in rendering the judgment complained of the trial court did not err. For the right of the husband to dispose of community funds is an absolute one, so long as it is not exercised for the purpose of defrauding the wife. Sayles' Stat., art. 2968; Stramler v. Coe, 15 Texas, 215; Martin v. McAllister, 94 Texas, 567. It does not appear that the use of the funds to pay the premiums on the policy as they accrued after his marriage to appellant was intended by Shoulders to be for the benefit of the community estate of the second marriage. On the contrary, it clearly appears from the record that he procured the issuance of the policy as a provision for the children of his first marriage in the event they survived him; and not having exercised the right, if he had a right by the terms of the policy, to change the beneficiaries named therein, when he continued paying the premiums as they accrued thereon after his second marriage he should be held to have done so with the same purpose and intent in his mind. As the use of the community funds could not be treated as an investment for the benefit of the community estate, and as their use in paying the premiums for the benefit of the beneficiaries named in the policy was not with an intent to defraud appellant, there was no legal ground upon which appellant could have recovered either a part of the sum paid or a part of the proceeds of the policy. The wife can not follow and recover funds of the community lawfully disposed of by the husband for other purposes than the benefit of the community estate.

As supporting her contention appellant relies upon Martin v. Moran, 11 Texas Civ. App., 509. There the question, as stated by the Court of Civil Appeals, was "whether money collected upon an endowment insurance policy upon the life of the husband, payable 'as directed

by will,' is community property of the husband and wife, or separate property of the husband, he having left a will making disposition thereof, and it being made to appear that the premiums were paid out of community funds." The court reached the conclusion that such proceeds were community property. It can not be denied that there are expressions in the opinion disposing of that case which fully support appellant's contention. But we think such expressions must be regarded as dicta merely. They applied to a state of facts not before the court at the time they were made. As remarked by the court in that case, a will speaks from the date of the testator's death, while a contract speaks from the time it is made. The right of the husband to dispose of the community estate, except for the purpose of defrauding his wife, is an absolute one only while the marriage relationship exists. While that relationship continues, if not under a disability—as lunacy, for instance—he may expend their joint estate ever so unwisely—may squander it in "riotous living"— or may give it away to objects meritorious or without merit, yet she can not be heard to complain. It is only when he disposes of it for the purpose of defrauding her that the law will afford her relief. But with the termination of the marriage relation the absolute right of the husband to dispose of the common property also terminates. He can not while alive, by a will to take effect at his death, dispose of such property and thereby bind the wife. The property at his death being still a part of the community estate, it remains such, and his desire expressed in his lifetime to have it otherwise can not be given effect. It is in this respect that the case before us differs from the case relied upon by appellant. In that case, at the time of the testator's death the funds had not been disposed, but were to be, as directed by the testator's will. Their character could not be so changed. At the time his will could be heard to speak, his absolute power of disposition had ceased. Another distinction between the two cases lies in the fact that in that one the effort on the part of the testator in effect was to give to himself property belonging to the community estate. The husband's power to dispose of such property we think could not be so exercised. Either during his life or by will to take effect at his death, he had no right to so change the character of the property. He could not by gift to himself make the common property his separate property. In this case whether the disposition made of the community funds should be regarded as gift at the time the premiums were paid or as investments for the benefit of the beneficiaries named in the policies, it was completed during his lifetime and while the marriage relationship continued; and moreover was for a purpose he had a right to accomplish. For it was not less clearly the right—and it may be said as well, the duty —of Shoulders to provide for the children of his first marriage should they survive him, than it was his right and duty to provide for appellant and his children by her. That while discharging a duty he owed those children he may have neglected to discharge a corresponding duty he owed to appellant and his children by her, furnishes no legal reason why the children of the first marriage should be deprived of the provision made by him for them. Such a reason would ap-

pear only after it was shown that in providing for them his purpose and intent was to defraud appellant.

As supporting the judgment rendered by the trial court appellee cites the case of Martin v. McAllister, 94 Texas, 567. That case, we think, to say the least of it, recognizes as existing in the husband all the power necessary to sustain his action in this one. It may, indeed, unless its facts are kept in view, be regarded as authority for saying that the absolute power of the husband over community property would render effective a gift thereof to himself, and thereby convert common property of the marriage into separate property of his own. In that case the policy on the life of Mrs. Martin was payable to her husband, who after her death, having collected the sum due on the policy, used it in paying community debts. On the grounds that the proceeds of the policy so used in paying debts of the community were a part of his separate estate, Martin claimed the right to reimburse himself by retaining property in his hands belonging to the community estate between himself and his deceased wife. Such a right in him was denied by the heirs of the wife. But the Supreme Court declared it existed, saying: "Our statute specially provides that the husband shall have the sole right of control of the common property, and it has been uniformly held that such control can not be interfered with unless it is exercised in fraud of the right of the wife." In answering the question: "Were the proceeds of the policy upon the life of Mrs. Martin the separate funds of her husband?" the court said:

"The money derived from the policy on the life of Mrs. Martin was not acquired during the marriage, but was received by the husband after her death, in pursuance of a contract of insurance made during her life and belonged to Thos. P. Martin in his separate right. . . . The right to the proceeds of the policy, whether upon the life of the wife in favor of the husband, or upon the life of the husband in favor of the wife, rests upon the same principle, which is that the proceeds of the policy belong to the person named as payee, and it becomes property upon the contingency of the death of the insured in the lifetime of the payee. Therefore, as it would not become the property of the husband or the wife during the lifetime of both of them, it can not be held to be community property, and is, therefore, the separate property of the one to whom it is made payable."

It will be observed that the contention was not that the husband should be charged with the wife's part of the community funds applied to paying the premiums, but was that the proceeds of the policy should be declared to be community property. In support of the conclusion reached by it that the proceeds of the policy were never a part of the community estate, the Supreme Court quoted the declaration of the Louisiana Court in Succession of Hearing, 26 La. Ann., 326, that "a policy of insurance is not a piece of property. It is the evidence of a contract." While not deciding the point, because it is not, as it was not in the Martin-McAllister case, necessary to decide it, we think it might well be that the proceeds of a policy

as in the case just mentioned should be held to be separate property of the husband, and yet the husband be held in a proper suit chargeable with the wife's share of community funds used to buy it.

The judgment is affirmed.

*Affirmed.*