**J. W. SESSIONS, Appellant, v. NATIONAL SURETY COMPANY et al., Appellees.**

No. 2564.

Court of Civil Appeals of Texas. Beaumont.

Jan. 31, 1935.

John H. Benckenstein, of Beaumont, for appellant.

W. G. Reeves and C. T. Duff, both of Beaumont, for appellee.

O'QUINN, Justice.

Appellant, a Texas corporation, domiciled at Beaumont, Tex., brought this suit in the district court of Jefferson county, against Geo. W. Brown, a resident citizen of Beaumont, Jefferson county, Tex., as administrator of the estate of R. T. Ronaldson, deceased, and also as administrator of the estate of Mrs. R. T. Ronaldson, deceased, to subject to the payment of a debt owed to it by R. T. Ronaldson the proceeds of certain insurance policies in the hands of appellee Brown, and in the alternative, the proceeds of said insurance policies except a reasonable portion thereof, or the premiums paid therefor, on the ground that said policies were taken out

**SAN JACINTO BLDG., Inc., v. BROWN.**

No. 2682.

Court of Civil Appeals of Texas. Beaumont.

Jan. 31, 1935.

Rehearing Denied Feb. 6, 1935.

and kept in force by the said R. T. Ronaldson, deceased, in fraud of his creditors.

The court sustained appellee's general demurrer to appellant's petition, and, appellant declining to amend, dismissed the suit. This appeal is from that order.

The only questions necessary to be determined are: (1) Were the proceeds of the insurance policies mentioned the separate property of Mrs. Ronaldson, and not subject to the payment of the debts of her husband R. T. Ronaldson; and (2) were the insurance policies procured and the premiums thereon paid with intent to hinder and defraud the creditors of R. T. Ronaldson?

Appellant, in substance, alleged:

(a) That it was a creditor of R. T. Ronaldson, deceased, prior, during, at, and subsequent to the dates that he took out three policies of life insurance payable upon his death to his wife, and the dates that he paid each and all of the premiums thereon.

(b) That each and all of said life insurance policies taken out by the said R. T. Ronaldson, and each and all of the premiums paid thereon by the said R. T. Ronaldson, were with the intent to delay, hinder, or defraud his creditors in violation of article 3996, R. S. 1925, wherefore, appellee and the estates which he, as administrator, represents, was not a purchaser for a valuable consideration.

(c) That each and all of said insurance policies were taken out by said R. T. Ronaldson, and each and all of the premiums thereon paid at a time when said Ronaldson was insolvent, wherefore, said payments of said premiums were not upon a valuable consideration, but voluntary transfers of such sums, under article 3997, R. S. 1925.

(d) Appellant prayed that all of the proceeds of said insurance policies in the hands of appellee, or if not all the proceeds then all of same except a reasonable amount, or all of the proceeds except what a reasonable sum of money would purchase in life insurance, and if not, then the amount of all the premiums paid thereon with legal interest, be subjected to the payment of appellant's debt.

Appellant alleged the following facts which are taken as true:

(1) That prior to January 1, 1926, and up to December 13, 1932, R. T. Ronaldson, deceased, leased office space from appellant in the San Jacinto Building in Beaumont, Tex.

(2) On January 1, 1926, said Ronaldson owed appellant the sum of $240 for past-due rent.

(3) From January 1, 1926, to April 26, 1932, said Ronaldson kept falling behind with his rents, and that on April 26, 1932, he owed appellant the sum of $2,743.40, and on said date he executed and delivered to appellant his promissory note for said sum to cover said amount of rent, payable one year after date.

(4) On November 23, 1927, said Ronaldson took out a policy of life insurance with the Union Central Life Insurance Company in the sum of $10,000, payable at his death to his wife, and paid and agreed to pay $159.40 as annual premium thereon. On November 23, 1927, said Ronaldson took out a second policy of life insurance with said Union Central Life Insurance Company in the sum of $5,000, payable at his death to his wife, and paid and agreed to pay the annual premium thereon of $168.55.

(5) On May 1, 1928, said Ronaldson took out a policy of life insurance with the Ætna Life Insurance Company in the sum of $10,000, providing for double indemnity, payable on his death to his wife, and if his death was caused by accident to pay her $20,000, and paid and agreed to pay a quarterly premium of $43.70 therefor.

Ronaldson regularly and timely paid the premiums on each of said policies, and same were in full force and effect on the date of his death. On December 13, 1932, Ronaldson and his wife were injured in an automobile collision from which Ronaldson died on said date, and his wife, the beneficiary in each of said life insurance policies, died the next day, December 14, 1932. Ronaldson left a will in which his wife was sole beneficiary. The will was timely filed for probate, duly probated, and appellee, Geo. W. Brown, appointed administrator of his estate on January 16, 1933, and on said date duly qualified as such. Mrs. Ronaldson died December 14, 1932, intestate, and appellee was duly appointed administrator of her estate, and qualified as such January 16, 1933.

March 21, 1933, appellant filed verified claim for $2,743.40 against the estate of Mrs. Ronaldson, which was rejected by appellee July 31, 1933. March 21, 1933, verified claim for said debt and claim was filed by appellant against the estate of R. T. Ronaldson, and on July 31, 1933, was allowed by appellee without priority.

Upon the death of R. T. Ronaldson on December 13, 1932, and upon the death of Mrs. Ronaldson, his wife, on December 14, 1932, the insurance companies paid to appellee as administrator of the estate of Mrs. Ronald-

son the sum of $34,648.23 in full discharge of said several insurance policies of which appellee has paid the sum of $20,000 to the sisters of Mrs. Ronaldson, her lawful heirs. The remainder of said proceeds is in the hands of appellee, and is sought herein to be subject to the debt of her deceased husband, R. T. Ronaldson, to appellant as evidenced by said promissory note.

■ It is well settled in this state that the proceeds of life insurance policies taken by the husband on his life, and made payable to his wife as beneficiary, at the time of his death becomes the wife's separate estate, and is not liable for the debts of her husband, unless same has been assigned as collateral security therefor, when, in such case, the balance over and above the debt secured becomes the property of the beneficiary named in the policy. Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585; Johnson v. Cole (Tex. Civ. App.) 258 S. W. 850; Jones v. Jones (Tex. Civ. App.) 146 S. W. 265; Washington Life Ins. Co. v. Gooding, 19 Tex. Civ. App. 490, 49 S. W. 123, 126 (writ refused); Evans v. Opperman, 76 Tex. 293, 299, 13 S. W. 312; White v. White, 11 Tex. Civ. App. 113, 32 S. W. 48; Farracy v. Perry (Tex. Civ. App.) 12 S.W.(2d) 651 (writ refused); Kerens Nat. Bank v. Stockton, 120 Tex. 546, 40 S.W.(2d) 7, 77 A. L. R. 362. There is no contention that the insurance policies had been assigned to any party for any purpose; therefore, the proceeds of said policies in whole, upon the death of R. T. Ronaldson, became the separate property of his surviving wife, Mrs. R. T. Ronaldson, the named beneficiary in said policies, and not subject to the debts of her husband.

■ Appellant contends that at the time Ronaldson took out the life insurance policies payable to his wife, he was insolvent, and the taking out of said policies and the payment of the premiums on same were in fraud of his creditors, and for the fraudulent purpose and with the fraudulent intent of hindering, delaying, and defrauding his creditors, wherefore the proceeds of such insurance policies were subject to its debt. This insistence is based upon the grounds that the payment of the premiums on the policies were gifts and transfers of his property to his wife when he was insolvent, with the intent to hinder, delay, and defraud his creditors in violation of articles 3996 and 3997, R. S. 1925, wherefore appellant was entitled to have the proceeds of the insurance policies subjected to the full payment of its debt, and if not the proceeds, then at least the amount

of the premiums paid to maintain said policies with interest thereon. We do not believe this contention is sound. In the first place, under the well-settled rule in this state, the proceeds of insurance policies taken out by the husband on his life for the benefit of his wife, upon his death, become the separate property of the wife free from liability for the debts of the husband; and, next, appellant did not allege that either Mrs. Ronaldson, the beneficiary in each of said policies, or the respective insurance companies issuing the policies, were parties to the fraud, if same existed on the part of R. T. Ronaldson, or that either Mrs. Ronaldson or the insurance companies knew of his alleged intent. Before appellant could avoid the contracts of insurance evidenced by the policies here involved, it was incumbent upon it to show that there was fraud in the formation of the contracts, and that Mrs. Ronaldson and the insurance companies, all being parties to the contracts, were parties to the fraud and participated in such fraud, which appellant did not allege, and hence could not prove. Central Nat. Bank v. Hume, 128 U. S. 195, 9 S. Ct. 41, 45, 32 L. Ed. 371. Furthermore, there is no statute in Texas limiting or regulating in any manner the amount one may expend out of his receipts for the payment of premiums on life insurance policies, nor what would render such payments transfers of property in fraud of creditors.

Among other authorities cited us by appellant as sustaining its contention, is Red River Nat. Bank v. De Berry, 47 Tex. Civ. App. 96, 105 S. W. 998. It is not believed that the case supports appellant, but, to the contrary, is authority for our holding. In that case the court had before it an Arkansas statute which limited the amount of insurance an insolvent husband could carry on his life for the benefit of his wife and children, as measured by the amount of premiums annually paid for the insurance, as provided in the statute, and which statute was expressly pleaded. Under that law, when the amount of the premiums paid did not exceed the amount permitted by the statute, the whole of the insurance contracted for went to the wife for her use free from the claims of her husband's creditors. As before stated, we have no statute in Texas limiting or in any manner regulating the amount one may pay for premiums on life insurance policies for the benefit of his wife, nor what such payments would render the contract fraudulent as to the insured's creditors. On its facts the Red River Nat. Bank v. De Berry Case is quite similar to the instant case.

There, as here, it was sought to subject the proceeds of a life insurance policy payable to the wife of the insured to the payment of the debts of her deceased husband. Also there, as here, it was alleged that the insured was insolvent at the time he took out the policy and paid the premiums on same, and that such payments were in fraud of his creditors. While the case was reversed on other grounds, the court on these questions held in line with our holdings here, citing and quoting at length from Central Nat. Bank v. Hume, herein cited supra.

Central Nat. Bank v. Hume involved the questions here in controversy. In discussing them, Chief Justice Fuller, among other things, said:

"Conceding, then, in the case in hand, that Hume paid the premiums out of his own money, when insolvent, yet, as Mrs. Hume and the children survived him, and the contracts covered their insurable interest, it is difficult to see upon what ground the creditors, or the administrators as representing them, can take away from these dependent ones that which was expressly secured to them in the event of the death of their natural supporter. The interest insured was neither the debtor's nor his creditors'. The contracts were not payable to the debtor, or his representatives, or his creditors. No fraud on the part of the wife, or the children, or the insurance company is pretended. In no sense was there any gift or transfer of the debtor's property, unless the amounts paid as premiums are to be held to constitute such gift or transfer. This seems to have been the view of the court below, for the decree awarded to the complainants the premiums paid to the Virginia Company from 1874 to 1881, inclusive, and to the other companies from the date of the respective policies; amounting, with interest, to January 4, 1883, to the sum of $2,696.10, which sum was directed to be paid to Hume's administrators out of the money which had been paid into court by the Maryland and Connecticut Mutual Companies. But, even though Hume paid this money out of his own funds when insolvent, and if such payment were within the statute of Elizabeth, this would not give the creditors any interest in the proceeds of the policies, which belonged to the beneficiaries for the reasons already stated.

"Were the creditors, then, entitled to recover the premiums? These premiums were paid by Hume to the insurance companies, and to recover from them would require proof that the latter participated in the alleged fraudulent intent, which is not claimed. * * * The premiums form no part of the proceeds of the policies, and cannot be deducted therefrom on that ground. * * * If in some cases payments of premiums might be treated as gifts inhibited by the statute of Elizabeth, can they be so treated here?

"* * * This argument in the interest of creditors concedes that the debtor may rightfully preserve his family from suffering and want. It seems to us that the same public policy which justifies this, and recognizes the support of wife and children as a positive obligation in law as well as morals, should be extended to protect them from destitution after the debtor's death, by permitting him, not to accumulate a fund as a permanent provision, but to devote a moderate portion of his earnings to keep on foot a security for support already, or which could thereby be, lawfully, obtained, at least to the extent of requiring that, under such circumstances, the fraudulent intent of both parties to the transaction should be made out. And inasmuch as there is no evidence from which such intent on the part of Mrs. Hume or the insurance companies could be inferred, in our judgment none of these premiums can be recovered."

■ If in the instant case the court had overruled the general demurrer to appellant's petition, and the case had gone to trial on said petition, there being no allegation that Mrs. Ronaldson, or the insurance companies which issued the policies, were parties to the alleged fraud on the part of R. T. Ronaldson in taking out the policies and making payments of premiums to maintain same, nor that they participated in such alleged fraud, no proof could have been offered to establish the fraud, and none could have been inferred, in the absence of which appellant was not entitled to recover the premiums.

■ If it can be said that appellant, in its brief, urges that the court erred in sustaining the general demurrer to its petition, and upon its refusal to amend, in dismissing its suit, because it was entitled to recover the cash surrender value of the policies on the date of Ronaldson's death, December 13, 1932, a sufficient answer to such contention is that appellant pleaded no such right, nor did it pray for any such relief. Moreover, it is not believed that any question as to the cash surrender value of the policies here in question is or could be involved. There was no suit by appellant on its debt against R. T. Ronaldson before his death, and on his death there could be no such thing as the cash sur-

render value of the policies, for they had then eo instanti become a liquidated demand payable in full to the beneficiary. The cash surrender value of a life insurance policy can exist only as long as the insured lives; it ceases when he dies.

It appearing from the face of appellant's petition that no cause of action was alleged, appellee's general demurrer thereto was properly sustained, and, appellant refusing to amend, the suit was properly dismissed.

The judgment is affirmed.