CARL WARTHAN, GUARDIAN AND J. D. MCLAUGHLIN, TEMPORARY ADMINISTRATOR OF THE ESTATE OF BUCKNER H. PATTERSON, DECEASED ET AL V. JOE EARL HAYNES AND HARDY MOORE, TEMPORARY ADMINISTRATOR OF THE ESTATE OF ROSA DILL PATTERSON, DECEASED*

No. A-4984. Decided March 7, 1956.
Rehearing overruled April 18, 1956.
(288 S.W. 2d Series 481)

---

*According to the pleadings in this case Buckner H. Patterson and Henry B. Patterson are one and the same person (Tr. 25). He is sometimes referred to as Henry or H.—Editor.

414

O. B. *Fisher,* of Paris, for J. D. McLaughlin, Temporary Administrator of the Estate of Buckner H. Patterson, deceased; B. F. *Edwards,* of Clarksville, for Carl Warthan, Guardian of the estates of Bobby Dale Patterson and Patricia Ann Patterson, minors, petitioners.

The Court of Civil Appeals erred in overruling the assertion of petitioner that all the proceeds of the group Accident Policy constituted the separate property of the insured, Patterson, and in holding that a pro-ratable part of the proceeds of an ordinary life insurance policy based upon the amount of the premiums which had been paid with community earnings should become a part of the community estate of the insured and his wife, and that the proceeds of a group policy also became a part of the community estate. Hildebrandt v. Ames, Texas Civ. App., 66 S.W. 2d 128; Paden v. Briscoe, 81 Texas 563, 17 S.W. 42; Volunteer State Life Ins. Co. v. Hardin, 145 Texas 245, 197 S.W. 2d 105, 168 A.L.R. 337.

*Moore & Moore,* of Paris, for respondents.

MR. JUSTICE CULVER delivered the opinion of the Court.

This case concerns the disposition of the proceeds of life insurance policies and the related question of the application of our community property laws.

Henry Patterson and wife, Rosa Dill, were accidentally killed as the result of an automobile collision, though Patterson survived his wife by a period of some fifteen or thirty minutes. No children were born to this marriage, but each left surviving children by former marriages. Three policies of insurance on the life of the husband were in force at the time of his death. One is a group accident policy taken out during the last mar-

riage, all premiums paid out of community funds. The second is an ordinary life policy issued before the last marriage, the greater portion of the premiums paid prior thereto. Both of these policies were payable to the wife, Rosa Dill, if she survived, and if not to the estate of the insured. The third is a group life policy payble to the wife as beneficiary, and providing for certain "Modes of Settlement" in the event she did did not survive. The premiums were likewise paid out of community funds. In all three policies there was reserved to the insured the unrestricted right of change of beneficiary.

The Court of Civil Appeals held the proceeds of both group policies to be community property of the last marriage and directed that one-half be paid over to each of the administrators of the respective estates. The proceeds of the ordinary life policy were divided in proportion to the amount of premiums paid before and after the second marriage; that is to say, the portion attributed to the premiums paid before marriage were held to be the separate property of the husband and awarded to his administrator and that portion attributed to the premiums paid after the marriage were held to be community property and divided equally between the two administrators after the payment of a community debt. 272 S.W. 2d 140.

Our problem here is to determine as between conflicting claims of the administrators of Patterson and wife whether the proceeds of these policies belong to the separate estate of the husband or to the community.

The Court of Civil Appeals, in holding that the proceeds of the group accident policy belong to the community estate, rested its decision principally upon our opinion in Sherman v. Roe, 153 Texas 1, 262 S.W. 2d 393, where the policy was on the life of the husband and payable to the wife if she survived, if not then to his estate, premiums paid out of community funds. In that case, however, the Court was dealing with the rare conjuncture where the husband and wife meet death so contemporaneously that it cannot be established which died first. We there interpreted the decision in Volunteer State Life Ins. Co. v. Hardin, 145 Texas 245, 197 S.W. 2d 105, 168 A.L.R. 337, to mean that such a policy prior to insured's death is not property in which the wife owns an interest, and further held that the estate of the wife is not entitled to claim one-half of the proceeds of the policy merely on the theory that the certificate was community property, therefore the proceeds must be community property. Sherman v. Roe based its decision that the proceeds

constituted community property on the provisions of Article 4619, Vernon's A.C.S. "* * * 'all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved' * * *," saying, "we believe that since the facts as to survivorship cannot be proved, the proceeds thus held should, by reason of the statute quoted, be deemed community effects." The implication is drawn that otherwise a different result would have been reached. We think that the holding in Sherman v. Roe is not applicable here for the reason that Patterson survived his wife if only for a very short period of time. The proceeds could hardly be said to be possessed by the husband and wife at the time the marriage was dissolved.

We are of the opinion that the holding in the Volunteer State Life Ins. Co. v. Hardin case, supra, is more nearly in point and is controlling here. In that case a policy on the life of the husband was payable to the wife. She predeceased her husband. Thereafter the husband named his sister as beneficiary. It was there held—as summarized by Justice Smedley in Sherman v. Roe—"that the wife, the beneficiary in a policy insuring her husband, with the right reserved to the husband to change the beneficiary, has prior to the death of the insured no vested interest in the policy or in the proceeds of it, even though the policy is taken out during marriage and all premiums are paid out of community funds and that the insured may at will change the beneficiary and thereby divest a prior beneficiary of all interest in the proceeds of the policy. * * *." See also 1 De-Funiak, Principles of Community Property, Sec. 123, p. 354. Jones v. Jones, 146 S.W. 265; Rowlett v. Mitchell, 52 Texas Civ. App. 589, 114 S.W. 845; Moore v. California-Western States Life Ins. Co., Texas Civ. App., 67 S.W. 2d 932.

Volunteer State life squarely lays down and reaffirms the doctrine announced in Martin v. McAllister, 94 Texas 567, 63 S.W. 624, 56 L.R.A. 585.

"* * * That where there is no intention on the part of the husband to defraud the wife, the proceeds of a policy on the life of the husband vest in the beneficiary named in the policy upon the death of the insured, even though the policy was taken out by the husband during coverture and the premiums were paid out of community funds." [145 Texas 245, 197 S.W. 2d 106].

While the facts in our case differ in certain respects, in that here the designation of an alternate beneficiary was made prior to the death of the wife and to his estate rather than to a named individual and the husband survived only fifteen or thirty minutes rather than a period of years, yet we think there is no substantial difference so far as the principle to be applied is concerned. The duration of the survivorship of the husband cannot be the determining factor and whether it lasted fifteen minutes or fifteen years has no legal significance.

If we accept as correct the rule in Volunteer State Life Ins. Co. v. Hardin that the proceeds of the policy on the life of the husband vest in the beneficiary named by him upon his death where no fraud is practiced upon the wife, then, under the facts of our case, it would seem that the proceeds of this group accident policy should be payable to the estate of the deceased husband. It could hardly be contended here that there was any intention on the part of the husband to defraud the wife. The policy was payable to her and if she had survived for any length of time the proceeds would have belonged to her separate estate. San Jacinto Bldg., Inc. v. Brown, Texas Civ. App., 79 S.W. 2d 164, wr. ref.; Evans v. Opperman, 76 Texas 293, 13 S.W. 312.

Martin v. McAllister, 94 Texas 567, 63 S.W. 624, 56 L.R.A. 585, cited in both Volunteer State Life Ins. Co. v. Hardin and Sherman v. Roe holds that the proceeds of a policy on the life of the wife payable to the husband become the separate property of the husband on the death of the wife even though the policy was taken out by the husband during coverture and the premium paid out of community funds. This result was reached on the statutory provision that the husband generally has the right of control of community property and that control cannot be interfered with unless it is exercised in fraud of the rights of the wife.

If Patterson, after the death of his wife, had survived long enough to have exercised his right of change of beneficiary by making the policy payable to his children, then the proceeds would belong to his children upon his death. We can see no substantial distinction in principle in alternatively making his estate the beneficiary in the event his wife did not survive him and thus preferring his children as the beneficiaries through that method. As between the children of the deceased parties there is no injustice done by the application of this rule. If the wife had survived for a like period of fifteen or thirty minutes,

her child would have eventually received all proceeds of the policy.

■ The complexities attendant upon dealing with life insurance proceeds and in the attempt to make them conform to our community property law are quite apparent. The decisions among the community property jurisdictions are not altogether in harmony nor even in our own state for that matter. It seems preferable, however, to distribute the funds in compliance with the terms of the insurance contract, absent fraud, than compound the difficulties by drawing fine distinctions. We conclude that the proceeds of the group accident policy belong to the separate estate of Henry Patterson. Nothing in this opinion, however, is to be construed as holding that in case of actual or constructive fraud upon the wife, beneficiary designations by the husband will preclude her or her estate from obtaining relief.

It has been decided in some community property states that where the husband takes out during the marriage insurance on his own life, payable at death to his estate, and the premiums are paid with community funds, at the dissolution of the marriage by the death of the husband the proceeds belong to the community estate. "Community Property Rights as Applied to Life Insurance," by Professor Huie, 17 Texas Law Rev. 121. In Martin v. Moran, 1895, 11 Texas Civ. App. 509, 32 S.W. 904, endowment policies were issued to the husband on his life payable as directed by his will. The premiums were paid with community funds and the wife survived. In his will he designated his executors as beneficiaries of the policies. It was held that the proceeds were community property. If, as it seems to be, the basis of that decision was, that for the husband, under certain circumstances, to pay premiums out of community and to make the proceeds payable to his estate, amounts to fraud upon the wife, it would not necessarily run counter to that of Volunteer State Life.

In Blackmon v. Hansen, 140 Texas 536, 169 S.W. 2d 962, the Court concludes that the proceeds of life insurance policies issued on the life of the husband and payable to his wife, the premiums being paid with community funds were community, half belonged to the wife and therefore only half of the insurance proceeds was subject to the state inheritance tax under Article 7117, V.A.C.S. In that case the Court followed the decision in Long v. Commissioner of Internal Revenue, 304 U.S. 264, 82 L. Ed. 1331, 58 Sup. Ct. 880, 118 A.L.R., 319, constru-

ing the Federal Statute similar to the one later adopted by our Legislature. The Court said:

"* * * The Texas statute having been literally taken from the Federal Statute the presumption is that the Texas Legislature knew of the construction given such statute at the time of its adoption, and intended to adopt such statute as construed by the Federal courts; and such statute is to be considered by the courts of this State in the light of such construction. * * *"

■ We do not disagree with the Blackmon construction of the Texas Inheritance Tax Statute but aside from that decision holding that the proceeds for inheritance tax purposes are community, it has been rather thoroughly established in Texas, and in all community property states for that matter, that the proceeds of a policy on the husband's life payable to the wife as beneficiary upon the death of the insured belong to the wife as her separate property. San Jacinto Bldg., Inc. v. Brown, supra; Davis v. Magnolia Petroleum Co., 134 Texas 201, 134 S.W. 2d 1042. This result is said to be based upon the right of the husband to make a gift of community property. Evans v. Opperman, supra.

The Court of Civil Appeals said in State v. Jones, 290 S.W. 244, that a policy on the life of the deceased husband payable to his estate was community property, one-half of which belonged to the wife inasmuch as the premium was paid out of the community estate. The Supreme Court, (Com. of App.) however, in 5 S.W. 2d 973, 974, reversed and held no inheritance tax was due for the reason that the wife took under the will and what she got under the will amounted to less than her one-half community interest. It is to be noted that in both the Blackmon and Jones cases as well as in Lee v. Lee, 112 Texas 392, 247 S.W. 828, the wife survived the insured husband.

Life insurance—while to some extent and in some instances —is considered in the nature of an investment, yet primarily it is designed for the protection of dependents, to compensate for the loss of support and to pay debts and expenses. This seems to be true in our case. Only the ordinary life policy here carried a "cash value." The courts have recognized that strict application of the rules of community property would partially defeat this primary purpose. Martin v. McAllister; San Jacinto Bldg., Inc. v. Brown, both supra.

The Court of Civil Appeals found support for its decision

in Martin v. Moran, supra, and Lee v. Lee, supra. It can be supported by the theory announced in Sherman v. Roe, supra, that, where it could not be determined which spouse died first, the deaths were presumed to be simultaneous and proceeds therefore were possessed at the time of the dissolution of the marriage.

We recognize that in other community property jurisdictions a contrary view to our solution prevails. For instance, In Re Castagnola, 1924, 68 Cal. App. 732, 230 Pac. 988, under facts quite similar to those presented here, held the proceeds to be community property and divided them equally between the parents of the deceased husband and wife. But California applies the community property law to insurance proceeds more strictly than does Texas. Generally speaking, California takes the view that where the premium on a policy insuring the husband's life is taken out during marriage and paid for with community funds, the proceeds are community assets and this seems to be true regardless of the question as to who may be the named beneficiary in the policy except where the policy is on the life of the husband payable to the wife. Travellers Ins. Co. of Hartford, Conn. v. Francher, 219 Cal. 351, 26 Pac. 482; Grimm v. Grimm, 26 Cal. 2d 173, 157 Pac. 2d 841; Bazzell v. Endriss, 41 Cal. App. 2d 463, 107 Pac. 2d 49; Mundt v. Connecticut General Life Ins. Co., 35 Cal. App. 2d 416, 95 Pac. 2d 966; New York Life Ins. Co. v. Bank of Italy, 60 Cal. App. 602, 214 Pac. 61.

In California and Washington the rule of proportionate ownership of the proceeds based on the premiums paid before and after marriage is applied.[1]

The clearly expressed ruling in Volunteer State Life Ins. Co. v. Hardin, supra, however, seems to preclude any claim for reimbursement to the community estate for the premiums paid during the marriage out of community funds in this case. In passing on this question the Court had this to say:

"Since the contract for insurance was lawfully made by the husband as the manager of the community estate, the community estate was not entitled to be reimbursed for the community funds lawfully used in paying the premiums on the policies. Rowlett v. Mitchell, 52 Tex. Civ. App. 589, 114 S.W. 845; Whiteselle v. Northwestern Mutual Life Ins. Co., Tex. Com.

---

[1] Community Property Life Insurance by Professor Huie, 17 Texas Law Rev. 146.

App., 221 S.W. 575. (The case last cited was overruled in Womack v. Womack, supra, but not on the point for which it is here cited.) * * * ."

We therefore say that the administrator of the deceased wife is not entitled here to reimbursement for any portion of the premiums paid during the marriage out of community funds.

The question as to the rights of the parties in any cash surrender values of these policies is not raised and is not therefore passed upon in this opinion.

■ The third policy, the group life, designated the wife as beneficiary without naming any alternate beneficiary. The "Modes of Settlement" clause has been held to be for the benefit and protection of the insurer in paying a death claim and is not determinative of the legal rights of persons entitled to receive those proceeds. Blanchett v. Willis, 161 S.C. 83, 159 S.E. 469, 75 A.L.R. 1428; Uptegrove v. Metropolitan Life Ins. Co. of New York, 145 Neb. 51, 15 N.W. 2d 220. On this point we agree with the Court of Civil Appeals and reject the holding to the contrary in Potter v. Young, 193 Ark. 957, 104 S.W. 2d 802.

What we said above we think applies with equal force to this group life policy — the only distinction being that no alternate beneficiary was named by the insured, but the proceeds were not "possessed" at the time the marriage was dissolved by the death of the wife. We therefore hold that the proceeds were the separate property of the deceased husband and are to be distributed in accordance with the laws of descent and distribution.

The guardian of the Patterson children naturally aligns himself with Patterson's administrator on the whole case, but prays that the proceeds be awarded to him directly instead of to the administrator in the interest of economy in costs of court. While the children will ultimately benefit we think the proceeds payable to the estate must go to the administrator first regardless of the additional costs involved.

The judgments of both the trial court and the Court of Civil Appeals are therefore reversed and rendered in favor of petitioner, the temporary administrator of the estate of Buckner H. Patterson, deceased.

Opinion delivered March 7, 1956.

MR. JUSTICE GARWOOD, joined by JUSTICES SMITH *and* WILSON, dissenting.

As correctly stated in the opinion of the Court, the problem here is, in effect, the application of our community property rules to three life insurance policies taken out by the husband on his own life, with reservation of his unrestricted right to change beneficiaries, and now matured by reason of his death, the wife being named as primary beneficiary, but having predeceased the insured husband by a few minutes. The policies, with respective relevant additional details, are:

A.  Employees group accidental death and injury policy, originating during the marriage, maintained (in effect) with community funds and stipulating the "executors or administrators" of the insured as alternative beneficiaries in the event the primary beneficiary should predecease the insured (as she did).

B.  Employees group life policy, originating and maintained as was policy A above, but with a special "Modes of Settlement" provision in lieu of the alternative beneficiary provision.

C.  Regular life policy, with the same alternative beneficiary provision as policy A above, but originating long prior to the marriage and with accordingly but a minor fraction of the total premiums having been paid with community funds.

The present contest lies in effect between the respective personal representatives of the wife and insured husband and thus does not directly involve questions such as the results of a wife's successors having elected to proceed against third party beneficiaries who received the policy proceeds instead of seeking an accounting against the husband or his estate at the proper time for adjustment of community rights. See Volunteer State Life Ins. Co. v. Hardin, 145 Texas 245, 197 S.W. 2d 105, 168 A.L.R. 337.

My principal point of disagreement with the Court is with reference to policies A and B. Notwithstanding that the community estate furnished all of the premiums—that is, the sole consideration,—for these policies, and that the latter were contracted for by the insured husband during the marriage, maturing without aid of even one act or contribution of the hus-

band as a single man except the act of his death, and notwithstanding the absence of any suggestion of a gift of the premiums or of the rights in the policy from the wife to the husband, the Court holds the full proceeds to be separate estate of the husband and recognizes to the community estate not even a claim of reimbursement for its premiums paid. Thus these sums of money, which, by every indicium classic in this and other community property states, are community property and lack even the least characteristic of separate property, become the separate estate of the assured husband merely because the contract happens to be one of *life insurance* as distinguished from a contract right of some other kind.

I do not mean to suggest that the Court has proceeded without any benefit of authority, although admittedly its conclusion lacks support from any other community property state and is in clear conflict with one or more of them. There is some authority by implication from decisions, or from language of decisions, of this Court in some three principal cases, to wit, the Volunteer Life case, supra, the later case of Sherman v. Roe, 153 Texas 1, 262 S.W. 2d 393, and the much earlier case of Martin v. McAllister, 94 Texas 567, 63 S.W. 624, 56 L.R.A. 585. But I submit that the philosophy of the Court's opinion and of such authority as may support it, represents a futile striving for simplicity, by taking life insurance out of the sphere of community property and thereby producing logical contradictions, overlooking realities of both law and fact, risking unfortunate death tax consequences, and eventually leaving us with little more in the way of rules than what may seem "fair" or "good" in the particular case.

The first and heaviest blow for this simplicity theory was struck in Martin v. McAllister, supra, where we held that the husband could augment his own estate by using community funds to pay premiums on a policy taken out by him on the wife's life and payable to himself. Despite the clearly contrary views of the earlier case of Martin v. Moran, 11 Texas Civ. App. 509, 32 S.W. 904, which was not mentioned in Martin v. McAllister but has been cited by us as authority to this good day, we said that a life insurance policy was not property, and especially were the proceeds not community property, since they became payable after dissolution of the community by death. Not unnaturally, in order to pursue the simplicity object in the McAllister case (where there was no claim of implied gift from the wife to the husband), we felt compelled to say that life insurance was not property. At the same time, perhaps troubled

by the very obvious fact that the effect of the decision was to divert community funds away from the community (as in the instant case), we invoked the husband's managerial power to give away community *property*. What he gives away, of course, is not the premiums. These go to the insurer, never to return. What he gives away is what the premiums buy, that is, the obligation of the insurer to pay, which of course, is property, just as much as a promissory note payable upon death of the payee or any other chose in action is property.

The same contradictory reasoning that the separate status of the proceeds is due both to the fact that life insurance is not property and the fact of the husband's power over community *property,* has carried over into the Volunteer Life case and Sherman v. Roe, both supra, as well as the instant case.

Naturally we haven't been consistent in pursuing this inconsistent and unrealistic theory. When the situation arose of a policy that had a cash surrender value at the time of divorce of the spouses, we very properly held that each was entitled to half of the cast surrender value, just as with any other community-owned chose in action, *and* we declared flatly that the policy *was* property. Womack v. Womack, 141 Texas 299, 172 S.W. 2d 307. We cited many authorities from other states clearly upholding this view. The federal courts took and relied on our statement as law. See Kemp v. Metropolitan Life Ins. Co., 5 Cir. 205 Fed. 2d 857, 860, stating, "It is now settled that a policy of life insurance is regarded in Texas as property." Somewhat later, however, in Sherman v. Roe, supra, we said, although it was not necessary to the decision, that the *rationale* of Womack v. Womack was but erroneous dictum. And we now say that Womack v. Womack "sheds little light" on the problem. Of course, nobody has ever asserted that the actual dispute in the Womack case concerned anything except the cash surrender value, which is a name given to the insurer's matured obligation to pay, at a given time prior to maturity of the full insurance, a less sum than the full insurance. Admittedly, too, this matured obligation is not the same obligation as the one to pay the full insurance. But the present relevance of Womack v. Womack is this: if the stipulated cash value of the policy as of the stipulated date is *property,* why isn't the policy itself property? "Policy" means the contract between insurer and insured. Both the promise of the insurer to pay the cash surrender value and the promise to pay the insurance itself are obligations of the policy. To say that the matured "cash surrender" obligation is property, which it admittedly is, but that

the contract out of which it arises is not property is quite illogical. Where a particular interest installment of a promissory note has matured but the principal has not matured, surely we never say that the interest obligation is property but the note itself is not. And to say that the matured obligaion is *community* property (and we properly still approve Womack v. Womack to this extent) but that the contract from which it arises is not community property, is equally illogical. If the holding in Womack v. Womack as to the cash surrender value is correct, then the theory of Martin v. McAllister and the Volunteer Life and the statement in Sherman v. Roe that a life insurance contract is not property is incorrect.

We need hardly labor the point. Any lawyer or businessman knows that in Texas, as elsewhere, life insurance policies are assignable and assigned every day, whether they have any cash surrender value or not. The assignment puts the assignee in the shoes of the insured. Obviously what is assignable is property. Obviously policies would not be assigned as they are, if they were not property. Indeed, the assignee of an unmatured policy with no cash surrender value may sometimes have reason to consider himself wealthy because of it. If the insured assignor has a heart attack and is no longer insurable, he would doubtless be delighted to buy the policy back from the assignee at a considerable gain to the latter, and certainly if it is not an old policy, the insurer would be happy to pay far more than a return of the premiums for the surrender of it, despite its lack of a stipulated cash surrender value at the time.

Let us suppose a case like the present with the following variations: the policies are ordinary life taken out by the husband shortly after the marriage; at the moment, the husband happens to need his ready cash for some emergency, so the wife pays the first premium from separate funds of her own. The husband then becomes uninsurable from a heart attack and suffers a heavy decline in his salary, so cannot pay the subsequent premiums. The wife accordingly pays them from her separate funds for ten years and until they are both killed just as here. Although the policy is payable just as here, and provides that the insured husband may change the beneficiary, will we say in that case that life insurance is not property and that the proceeds properly go to the husband's heirs? Almost certainly we will not. Yet if we say that the proceeds do *not* go to the husband's estate and heirs, we can say this only because the policy is *property* produced by premiums from the wife's separate estate. And if a policy is property where the wife's

separate estate pays the premiums, is it any the less property where the community pays them?

If we say that, while life insurance *is* perhaps property in one sense, it yet is *not* property in other senses, because not an "investment," that approach, too, is at odds with reality—even though Martin v. McAllister, supra, may support it. Let us concede that the modern flood of advertisements describing life insurance in terms such as "a good investment," is just that much "puffing." But if, for example, the spouses buy a hideous picture or statue just for the purpose of bemusing their social circle, or if the husband buys a decadent hunting dog for no very explainable reason, are these purchases any the less property, because they scarcely qualify as "investments?" And what is true of a picture, statue or dog is no less true of a chose in action, however insignificant its value at a given moment.

The idea that life insurance should be an exception to principles applied to other contract rights seems to have led us into still further contradictions, which can hardly be explained otherwise than by abandoning the process of applying general rules other than the rule of "good" or "practical" results in the particular case.

In the period between Martin v. McAllister on the one hand and the Volunteer Life case and Sherman v. Roe on the other, we have held and stated the contrary of their doctrine in various cases, and in no case, including the present, do we repudiate these contrary decisions nor seriously attempt to face the conflict they reflect.

These interim decisions are Blackmon v. Hansen, 140 Texas 536, 169 S.W. 2d 962, and cases on which it relied, to wit, State v. Jones, 290 S.W. 244 (rev. on other grounds by Comm. of App., 5 S.W. 2d 973), and Lee v. Lee, 112 Texas 392, 247 S.W. 828.

Blackmon v. Hansen held that the state inheritance tax, which by its literal terms applied to all insurance upon the life of the decedent above $40,000, nevertheless actually applied only to half of the proceeds, which in the particular case were payable to the wife, who survived. We said:

"The courts of this state have held that proceeds of a life insurance policy, taken out by the husband and payable to the estate of the decedent, the premiums of which were paid for with community property belonging to the community estate,

are one-half the property of the wife, and that said part is no part of the estate of the husband. (Citing Martin v. *Moran*, State v. Jones, and Lee v. Lee, all supra.) Therefore we hold that only onehalf of the proceeds * * * is subject to taxes under Article 7117, supra, as part of the husband's gross estate."

Now, as I argue further on, we might properly proceed to hold that where the wife survives as beneficiary to a policy on the life of the deceased husband, she gets the full proceeds as her separate property on the theory of a gift by the husband of his *community* interest in the policy. But certainly the above-quoted language, which purports to be the very heart of the decision, recognizes, if not proclaims, the *property* interest of the community in life insurance on a spouse bought with community funds, and actually holds the proceeds to be community in the hands of the beneficiary wife.

Our instant opinion dismisses the Blackmon case with the observation that it followed a pertinent opinion of the Supreme Court of the United States regarding the federal estate tax. One may well ask—so what? Certainly we do not mean to suggest that such federal decisions as recognize the community property status of proceeds of life insurance on the life of a spouse, with consequent lower estate taxes than would otherwise be payable, should not be followed? At least, Texas estate owners and tax lawyers will hope that such is not the inference. We have often cited Blackmon v. Hansen as being good law and have never suggested otherwise. But if, as it holds, the proceeds to a surviving beneficiary wife of the insured husband are *community*, how can we logically say, as we did in Martin v. McAllister, supra, and now do here, that proceeds to a surviving husband beneficiary of an insured wife are his *separate* property?

As above indicated, Blackmon v. Hansen cited the Civil Appeals holding in State v. Jones (another state inheritance tax case) as authority for recognizing the community *property* interest in the insurance. The cited holding was that the proceeds of insurance on the husband's life, payable and paid to his estate, were community property. *because* paid for with community premiums. 290 S.W. 244, 250. We have repeatedly cited this Civil Appeals holding and on each occasion have noted that the actual judgment of the Court of Civil Appeals was "reversed on other grounds," thus clearly indicating that the reversal by the Commission of Appeals did not affect the holding in question. See Womack v. Womack, Sherman v. Roe, both su-

pra. The latter, with which the Court now seems at least to have no quarrel, actually quotes with approval the same language which I quote above from Blackmon v. Hansen, including the reference to State v. Jones and other decisions, and adds that "The three cases cited in the foregoing quotation from Blackmon v. Hansen support the rule there stated, and it is the rule in the other community property states." 262 S.W. 2d 393, 398.

Despite these perfectly clear statements (with approval) of what the Jones-State litigation stands for, we now seem to suggest that this often-cited holding of the Court of Civil Appeals was adversely affected by the reversal of its *judgment* by the Commission (5 S.W. 2d 972). The Commission not only did not reject the holding but, on the contrary, approved it. The Court of Civil Appeals held that the entire proceeds were community, *but* that the husband's half had passed to the widow by his will due to her election to take under the will, and that this latter half, along with a corresponding half interest in certain lands, was taxable. The Commission concurred that the proceeds were community but held further that *neither* half passed by the will, since the will was merely a sort of partition whereby the widow actually got even less than the value equivalent of her community half of the total property. The theory of partition—correct or otherwise—was wholly beside the point unless the Commission had agreed that the insurance proceeds were community property as the Court of Civil Appeals had held they were.

Another decision cited in Blackmon v. Hansen and, like the others, repeatedly recognized by us as supporting its view heretofore quoted, is Lee v. Lee, supra, where the proceeds of an employees' death certificate, earned during the life of the community by the deceased husband but having no beneficiary designation, were held by us to be property of the community and thus to belong to the surviving putative wife instead of to an early and lawful wife of the insured.

Cited also in Blackmon v. Hansen was the early case of Martin v. Moran, supra, which preceded Martin v. McAllister and is in conflict with the latter. The Moran case held, in brief, that life insurance *is* property and that accordingly the proceeds of insurance on the husband's life payable and paid to his estate were community property where the premiums were paid with community funds; that to allow the husband to use community funds to augment his separate estate through life insurance would be to violate the principle that he may not as community manager make a gift of the community property to

himself. As also indicated above, the Moran case has been repeatedly cited by us with approval and for the very holding which it makes. The Court's opinion in the instant case does not mention the fact, but in Sherman v. Roe, supra, our latest decision on this general subject, we actually relied on the Moran case, as well as on the statutory presumption concerning community property. After quoting from the Moran opinion, we said:

"The effect of awarding all of the proceeds to the separate estate of the husband would be to hold that he can give his wife's interest to himself. Martin v. Moran has been cited with approval in Lee v. Lee, * * * and in Blackmon v. Hansen, * * *." (262 S.W. 2d 393, 399).

We held in Sherman v. Roe that the proceeds were community property (although *saying* that the *policy* was *not* property). The foregoing quotation gives one of our reasons for not holding otherwise. If that is not its purpose, it is utterly meaningless. And whatever the logical difference between the simultaneous death situation involved in Sherman v. Roe and the nonsimultaneous death situation of the instant case, the result in Sherman v. Roe certainly supports the theory of Martin v. Moran and similar cases in attributing significance to the payment of the premiums by the community.

All we now say about Martin v. Moran is that it seems consistent with the Volunteer Life case in that the latter, while holding against the community claimant, yet states that if the case should involve fraud on the part of the husband a different result might obtain. But the whole point of Martin v. Moran is that when the husband actually gives the community property to his separate estate, as here, it is the same as if he had intentionally cheated the community.

It is true that in neither the Moran, Blackmon, Jones nor Lee cases did the wife predecease the husband, as here. But just as in any case of division of community property, it makes no difference who died first, unless we say that the property on hand at the time was not really property. If the community has an interest in property, obviously that interest does not automatically disappear on the wife's death. There may be some point of argument as to whether the managerial power of the husband permitted him to make a gift over to his separate estate upon failure of the wife to survive as primary beneficiary, but otherwise there is no difference for our purposes

between a policy payable to his separate estate as primary beneficiary and one like Policy A in the instant case payable to his estate secondarily. Of course, Policy B, when we eliminate, as we properly do, its "Modes of Settlement" provision, is actually without any secondary beneficiary designation at all. There the effect of our decision is really to presume a provision in favor of the estate of the husband. This would seem even less justifiable than to enforce such a provision when actually made.

Returning to Blackmon v. Hansen, conceivably it and State v. Jones were weighted with a not unnatural prejudice against the state inheritance tax (as well as the more onerous federal estate tax), but whatever the inspiration for these decisions, they, like Martin v. Moran and Lee v. Lee, clearly rested on the logical ground that, although the subject matter was life insurance, the community, and not the separate estate of the husband, had paid for it, and so the wife had a community interest in it. This, as stated, runs counter to the holding in Martin v. McAllister that the wife never had any interest; and the further we go in the Martin v. McAllister direction, the further we get from our present partial death tax immunity based on community ownership. The new so-called marital deduction provision of the federal law (I.R.C., 26 U.S.C.A., Sec. 2056) does, generally speaking, permit in all states the practice of "splitting" the estate on death of one of the spouses, by exempting, up to half of the total estate, the property passing to the surviving spouse. The relative advantages formerly enjoyed by the few community states are thus no doubt less than they were in earlier times, but, notwithstanding this, it is still highly important from the estate tax standpoint for citizens of the community states to preserve their community property institutions, including the community status of life insurance proceeds. In a case like the present, but involving very large sums of money, the proceeds, if separate property of the husband, would seem undoubtedly subject in their entirety to the estate tax, and the new marital deduction would not be available, because its allowance requires that the property to be deducted shall have passed to the surviving spouse and there is no such surviving spouse, the wife having predeceased the husband.

Incidentally, the Internal Revenue Act of 1954 seems to assume that life insurance proceeds are community property to the extent that the policy is paid for with community premiums. See I.R.C., 26 U.S.C.A., Sec. 2056(c) (2) (B) (iii).

One may cheerfully admit that the community property

institution is complicated, but making illogical exceptions will hardly simplify it. The next case to confront us may be the quite possible one in which the husband in the utmost good faith procures policies, payable (like those here involved) to his estate (Policy A) or to nobody at all (Policy B) upon prior death of the primary beneficiary wife, and promptly thereafter, from sickness or other bad luck, he becomes unable to keep up the premiums; the wife gets a job and keeps them up for ten years solely with her earnings; then both parties are killed, just as in the instant case, the wife leaving young children by an earlier marriage and the husband leaving only a grown and well-fixed second cousin. No doubt we still strive to decide that case in favor of the community, that is, just opposite to the decision we now make. But, if we succeed, we will do so only by one of those same "fine distinctions," which we presently labor to avoid.

A more logical approach to the Court's conclusion would be on the single ground that, admitting the really undebatable point that a life insurance policy is property, with corresponding rights of the community in the proceeds, nevertheless, under our Texas law, the husband has rather extraordinary powers over community property. Actually I think the Court has this theory uppermost in mind. The only trouble with it is one, which, in the instant case, is insurmountable, to wit, that, as held in Martin v. Moran, supra, "the husband can give his interest in the community property to another, but he cannot give his wife's interest to himself."

It may be that an inter vivos gift of any specific item of community property by the husband to his impoverished mother is valid as to the wife's interest as well as the husband's; but, unless an insurance policy is, indeed, not property at all, the husband simply cannot give the wife's interest to himself, consistently with community property principles. And to give it to his separate estate at his death is no more nor less than giving it to himself. Martin v. Moran, supra. The fact that his estate is only an alternative beneficiary bears merely on the honesty of his motives. If we loosen this safeguard of the community, obviously the whole idea of community property tends to fall, because the marital property then is, to all intents and purposes, the property of the husband—as outsiders have at times contended that it is, anyway. We have, indeed, gone far to find a gift of community property to the *wife* so as to make it her separate estate, where the husband-manager conveys it to her or has it conveyed to her, but this is something quite different

from the husband, who is a sort of trustee of the wife's half, conveying to himself or buying a conveyance from a third party to himself with community funds.

But we say—and with some force—that in the instant case there is essentially no difference between making the proceeds the separate property of the husband (to the benefit of his children by his first wife) and permitting him, as we would no doubt have done, to accomplish the same result by a direct *inter vivos* gift to the same children. In other words, we say that the husband may be deemed to have lawfully given the community property to himself when, as it later turns out in the particular case, the result is the same as a "reasonable" gift by him to someone other than the wife. Any injustice thereby possible to the wife we will avoid, we say, by applying the rule recognized in part (but not applied) in Martin v. McAllister, supra, that the husband shall not thus be allowed to commit intentional or "constructive" fraud, of which we have here neither the one nor the other.

Obviously these very terms, particularly the latter, are themselves pregnant with fine distinctions. True, they may be already in the law in cases where the husband makes an outright gift to third persons, but we put them into the law still deeper by saying as we now do, that a gift from the husband to himself is *not necessarily* constructive fraud, and thereby expand rather than contract the field for complications and distinctions.

Take the illustration last above presented, where the wife who has young children by an earlier marriage pays all or practically all the premiums with her earnings. Let us say that the possible heirs of the husband are (1) a young child by another marriage and (2) a remote wealthy cousin. In the accident both the wife *and* the *husband's* young child are killed, slightly predeceasing the husband. Obviously the husband's wealthy cousin will get the proceeds which, under the instant decision, belong to the husband's separate estate. There is no more constructive fraud than in the instant case, since, if we assume the husband knew the effect of the alternative beneficiary provision and knew that his child, upon prior death of the wife, would normally inherit the proceeds, the only thing possibly to be constructive fraud is the unexpected death of the child and the wife.

Take the same illustration, but involving a savings bond

bought with community funds, the bond being registered in the name of the husband with a "p.o.d." provision in favor of the wife, and in case of her prior death, in favor of the husband's estate. Undoubtedly the bond is community property, but, of course, the husband can give it to his estate, under the instant decision, and so the wealthy cousin will get the proceeds to the prejudice of the wife's children, unless we say that the unpredictable event of the prior death of both the wife and the husband's child makes constructively fraudulent that which up to then was not constructively fraudulent. I don't see how such a process would simplify the law, but we would have to follow it or reach a most unjust result.

To judge constructive fraud in a disposition made by the husband in 1950 by the test of who his heirs actually turn out to be in 1960 may be justice in a particular case like the present, but it is justice by hindsight or by luck.

One might add with reference to the gift theory that, as applied to even Policy A of the instant case, it is quite unrealistic, and this for the simple reason that when the average businessman, and a *fortiori* the average truck driver, stipulates "to my executors or administrators" or "to my estate" he hasn't the remotest idea that he is stipulating in favor of his *separate* estate as distinguished from the community estate. So in a goodly number of cases, the instant decision will injure not only the community estate but also the insured husband himself, who never intended his heirs to benefit.

This is all the more true as to Policy B, since we correctly hold that it does not even stipulate the "executors or administrators" or "estate" of the husband, and there is accordingly no ground at all for the theory of a gift to his separate estate. As to Policy B, we thus make, not one but two, quite doubtful conclusions: (a) that the husband can lawfully give the proceeds to himself, if only he allows the wife the first chance to get them (by surviving) and (b) that he actually meant to give to himself as secondary beneficiary, although the policy designated no secondary beneficiary. Lee v. Lee, supra, held the proceeds to be community where no secondary or primary beneficiary was specified, and it would seem to be no distinction that the wife in that instance survived.

So I feel strongly that the proceeds of both policies, and particularly those of Policy B, should go to the community estate. This conclusion finds certainly no less support than its

contrary in our decisions. It has been voiced long since by Professor Huie, who is frequently cited both within and without the state as an authority on the general subject. In discussing the point, the same author severely criticizes Martin v. McAllister, supra, on which the Court now relies, and follows the contrary reasoning of Martin v. Moran, supra. 17 Texas L. Rev. 121, 127, 128-131; 18 idem 121, 148.

The above conclusion does not entail overruling the Volunteer Life case, supra, still less Sherman v. Roe, supra, although it does conflict with some of the reasoning of the former and with a statement made in the latter.

As before indicated, Sherman v. Roe held for the community, purporting to rely (in part) on Martin v. Moran, supra, but incidentally stating that life insurance prior to the death of the insured was not property, except to the extent of actual cash surrender value. In the Volunteer Life case, the plaintiff claiming as heir of his mother, who had predeceased his insured father, sued his father's sisters, who were named as primary beneficiaries after the death of the mother and as such had received the proceeds upon the father's death. However, the son did not claim any part of the proceeds *as proceeds,* but only claimed his mother's half interest in the substantial cash surrender value which the policies admittedly carried at the time of the mother's death. We recognized this property interest on his part in accordance with Womack v. Womack, supra. But we denied his suit as against the policy beneficiaries, on the ground that his real claim was against his deceased father for not making a proper community settlement with him on the death of the mother and that he had failed to show that such proper accounting had been denied him. The situation was more or less the same as if the father had assigned to the sisters a promissory note payable to himself but representing a loan of community funds, and the sisters had collected it. If the son rad already received in a community accounting enough to compensate him for the value of his part of the mother's total community interest, naturally he had no right to the proceeds of the note. To reach the result we reached, the statements as to lack of a community interest in the policy (apart from the cash surrender value) were unnecessary. It is only with these statements, including their approval of Martin v. McAllister, that this dissent takes issue.

Nor does the thesis here advocated destroy the right of the husband effectively to insure his life in favor of third persons.

Such transactions may in a proper case amount to no more than legitimate gifts of community property and as such be sustained. In such instances, it is not unreasonable to say, as I understand Professor Huie to do, that the act of the husband in naming the third party as beneficiary amounts to an incomplete gift, which will mature upon the death of the husband, provided the premiums are kept up, the beneficiary survives and the beneficiary designation remains unchanged. This idea is not inconsistent with the idea that the community has a real interest in the policy. Certainly the *husband* has an interest, since, under most types of policy, he is free to change the beneficiary, to surrender the policy for its cash surrender value or to let it lapse. When we recognize this interest in the husband, what is to prevent our recognizing it in him *as* manager or trustee for the community, the funds of which he is using for premiums? This interest in the policy by the community does not necessarily inhibit the insured community manager from effectively designating a third party beneficiary, nor does his actual designation of such a beneficiary destroy the interest of the community any more than it would have destroyed the interest of the insured had he been a single man at all relevant times.

And even as the husband may in a proper case effectively designate a third party beneficiary, so may he make the proceeds the separate property of the wife, just as he may make any item of community property into her separate property by gift. The proper way to do this would seem to be, however, to assign the policy to her as her separate property as well as designating her as the primary beneficiary. The husband may then give her the premiums as needed and, if desired, pay them to the insurer as her agent.

As to Policies A and B, I would affirm the judgment of the Court of Civil Appeals in favor of the community as represented by the respondent Moore, temporary administrator of the wife. As to Policy C, which was taken out by the husband long prior to the marriage and to which only a small fraction of community premiums were contributed, I should, because of these facts, but not for the other reasons given by the Court, hold for the separate estate of the husband, as represented by his administrator McLaughlin, and would modify the judgment below accordingly, at the same time, however, allowing the community reimbursement for its premiums contributed.

Opinion delivered March 7, 1956.

Rehearing overruled April 18, 1956.